**S. AMANDA MARSHALL, OSB # 95347**
United States Attorney
District of Oregon
**JAMES E. COX, JR., OSB # 08565**
jim.cox@usdoj.gov
Assistant United States Attorney
United States Attorney's Office
District of Oregon
1000 SW Third Ave., Suite 600
Portland, Oregon 97204-2902
Telephone:     (503) 727-1026
Facsimile:     (503) 727-1117
          Attorneys for Defendant United States

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## EUGENE DIVISION

|  |  |
|---|---|
| **DIANE ROARK,** | **Case No.: 6:12-CV-1354-AA** |
| **Plaintiff,** | |
| **v.** | |
| **UNITED STATES OF AMERICA,** | **REPLY BRIEF IN SUPPORT OF DEFENDANT UNITED STATES OF AMERICA'S MOTION TO DISMISS ALL** |
| **Defendant.** | **CLAIMS EXCEPT FED. R. CR. P. 41 RETURN OF PROPERTY CLAIM** |

**FED. R. CIV. P. 12(b)(1), 12(b)(6)**

The United States of America, by S. Amanda Marshall, United States Attorney for the

District of Oregon, and through James E. Cox, Jr., Assistant United States Attorney for the

District of Oregon, submit this reply brief in support of Defendant's motion to dismiss all claims

except the Federal Rule of Criminal Procedure 41 return of property claim.

# I.    INTRODUCTION

Plaintiff Diane Roark's ("Plaintiff's") opposition to the government's motion to dismiss fails to provide a basis to conclude that she has standing to assert a claim for declaratory relief based on alleged violation of her constitutional rights.   Although Plaintiff describes a number of injuries she alleges she suffered from the criminal investigation that included a search and seizure of her property, she has failed to show how a declaration from the Court will redress her alleged injuries.  Moreover, Plaintiff has also failed to plead facts sufficient to state a claim for relief for violation of her constitutional rights.  For these reasons, the Court should grant Defendant's motion to dismiss all claims in the Complaint except Plaintiff's return of property claim under Federal Rule of Criminal Procedure 41(g).

# II.    ARGUMENT

## A.    Plaintiff's Claim for Declaratory Should Be Dismissed.

### 1.    Plaintiff's alleged injuries cannot be redressed by the requested declaratory relief.

In her opposition to Defendant's motion to dismiss, Plaintiff asserts that she has experienced a variety of injuries due to the criminal investigation into the leaks regarding the Terrorist Surveillance Program.  The asserted injuries include (1) financial losses, (2) loss of use of the property that was seized in the 2007 search, (3) uncertainty about the status of the criminal investigation, (4) loss of association with the other subjects of the investigation, (5) emotional distress, and (6) damage to her reputation.  (Opp. at 31-38.)  However, Plaintiff has not shown a significant possibility of future harm or a substantial likelihood that her claimed injuries can be redressed by the requested declaratory relief.  Thus, Plaintiff has failed to demonstrate constitutional standing for her claim for declaratory relief.  *See Coral Const. Co. v. King County*,

941 F.2d 910, 929 (9th Cir. 1991) ("Where only injunctive or declaratory relief is sought, a plaintiff must show 'a very significant possibility' of future harm in order to have standing to bring suit.") (citation omitted).

The financial losses, loss of association, and emotional distress that Plaintiff alleges have all already occurred, so a declaration that Plaintiff's constitutional rights were violated would do nothing to redress those injuries. A declaration would also not redress Plaintiff's loss of property from the 2007 search and seizure. Although Plaintiff is seeking the return of her property in her return of property claim under Federal Rule of Criminal Procedure 41(g), "a plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 185 (2000).

Plaintiff also claims injury in the form of uncertainty about the status of the criminal investigation. Plaintiff acknowledges that she received a statement from the government that "at the present time [the criminal investigation] is not being pursued," but she asserts that the investigation could be revived. (Opp. at 33.) Plaintiff does not provide any facts which suggest that this will happen. In fact, there is no open investigation of Plaintiff and no intention by the government to reopen the investigation. Moreover, the passage of time also diminishes the threat of prosecution as a basis for standing. *See Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 774 (9th Cir. 2006) ("The alleged violations are thus likely time-barred, diminishing any threat of prosecution that would have supported standing at the outset of this suit.").

More importantly, even if Plaintiff could state a cognizable injury based on fear of prosecution, she would still lack standing because that injury cannot be redressed by the relief she requests – a declaration that any aspect of the criminal investigation violated Plaintiff's constitutional rights. *Compare California Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088 (9th

Cir. 2003 (holding that credible threat of prosecution is cognizable injury when lawsuit seeks to invalidate the statute that creates threat of prosecution).

This leaves Plaintiff's alleged reputational injury. Plaintiff claims that "she was branded as an irresponsible outcast and a leaker" in the intelligence community. (Opp. at 37.) Plaintiff's alleged reputational injury is also not enough to confer standing for her claim for declaratory and injunctive relief. "The Supreme Court has consistently held that reputation is not a sufficient interest to avoid mootness. [] Any interest that would not be enough to keep the case from becoming moot is necessarily insufficient to confer standing." *Jackson v. California Dept. of Mental Health*, 399 F.3d 1069, 1075 (9th Cir. 2005) (citing *Spencer v. Kenna*, 523 U.S. 1, 16-17 n.8 (1998) (internal quotation omitted).

In the circumstances where reputational injury is sufficient to confer standing, the reputational injury is typically a primary injury, not a collateral consequence of an action. *See McBryde v. Committee*, 264 F.3d 52, 57 (D.C. Cir. 2001) ("[T]he Supreme Court has strongly suggested, without deciding, that where an effect on reputation is a collateral consequence of a challenged sanction, it is insufficient to support standing or, presumably, to escape mootness.") (*citing Spencer v. Kenna*, 523 U.S. 1, 16-17 n.8 (1998)); *see also Meese v. Keene,* 481 U.S. 465, 472-77, (1987) (holding that potential distributor of foreign films had standing to challenge Justice Department's characterization of films as "political propaganda" since it would affect "his personal, political, and professional reputation" and impair his ability to practice his profession). "At some point, however, claims of reputational injury can be too vague and unsubstantiated to preserve a case from mootness." *McBryde*, 264 F.3d at 57.

The D.C. Circuit Court of Appeals addressed the line between reputational injuries that satisfy the standing inquiry and those that do not in the *McBryde* case. In *McBryde*, a district

court judge who had received a public reprimand and suspension alleged that despite the fact that he had already served the suspension he still had standing to challenge the discipline because of the continued reputational effect of the discipline. The D.C. Circuit held that the judge had standing to sue because a favorable decision could remedy the effect of the reprimand. However, the court noted that if the only injury had been the record of the suspension, then that injury would not be sufficient to confer standing because the suspensions had been served and the Court could not rehabilitate the judge's reputation as to the record of the suspensions. *Id.*; *see also Advanced Mgmt. Tech., Inc. v. FAA*, 211 F.3d 633, 636 (D.C. Cir. 2000) (holding that sufficient reputational injury to confer standing did not exist when the plaintiff "offered no evidence that the [defendant]'s findings cast any shadow over its business activities").

Under this standard, Plaintiff's alleged reputational injury is not sufficient to confer standing for two reasons. First, Plaintiff retired from her position with the HPSCI in 2002 and has not alleged that she performed any further work in the intelligence community at the time of the 2007 search. In fact, she claims that she declined an offer by her Maryland colleagues to engage in further work in the industry after her retirement. (Analysis of Aff. at 13.) Thus, the alleged injury is too vague and unsubstantiated to confer constitutional standing on her claim for declaratory relief.

Second, it is not likely that the alleged reputational injury can be redressed with a declaration in her favor. Plaintiff was never charged with any criminal offenses, and she is not asking the Court to issue a declaration that she was not the source of the leaks regarding the TSP. Rather, she is asking for a declaration that the investigation violated her constitutional rights. It is not at all clear how such a declaration would repair the alleged reputational injury of being branded as a "leaker."

Finally, Plaintiff plainly acknowledges in the Complaint and her opposition brief that "[m]ore than anything else" she is seeking declaratory relief to establish a precedent about the rights of whistleblowers who are subjected to allegedly retaliatory investigations. (Opp. at 39-40.) While Defendant does not question the sincerity and deeply-held nature of Plaintiff's interest in establishing a legal precedent for others, that interest is simply not a basis for establishing constitutional standing for her claim for declaratory relief. *See Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 485-86 (1982) (nothing that "the psychological consequence presumably produced by observation of conduct with which one disagrees [] is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms").[1]

### 2. Plaintiff has failed to plead facts sufficient to state a claim for declaratory relief.

#### a. First Amendment.

Plaintiff alleges in the Complaint that the government violated her First Amendment rights by (1) asserting that it does not have to return certain property to Plaintiff because it contains government information, and (2) obtaining a search warrant to search her property based on a surreptitious search. (Complaint ¶¶ 9-11.) Plaintiff's opposition to the government's motion to dismiss raises a host of new alleged first amendment violations, including the continued government possession of Plaintiff's property, the possibility of criminal prosecution, and the government's refusal to allow her to publish an op-ed because it contained classified information. (Opp. at 4-12.)

---

[1] Furthermore, it is worth noting that the government has recently taken efforts to expand the rights of whistleblowers, including passage of the Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112–199 (Nov. 27, 2012), and issuance of Presidential Policy Directive-19 (Oct. 10, 2012), which protects the rights of whistleblowers in the intelligence community.

Plaintiff has failed to plead facts sufficient to state a claim under the First Amendment for any of the actions alleged in the complaint or Plaintiff's opposition brief. The government's assertions regarding the basis for not returning property to her in no way infringes on Plaintiff's free speech rights. Plaintiff is free to make her own arguments when that issue is briefed to the Court.

Moreover, the government's search and seizure of Plaintiff's property in 2007 did not violate the First Amendment. As an initial matter, Defendant disputes Plaintiff's characterization of the seized material as political speech. (Attachment 7 to Opp.) Plaintiff has acknowledged that the reasons she created the summary of NSA technology that is described at length in the affidavit was to further a business activity that she and her colleagues were considering. (Analysis of Aff. at 12-13.) More importantly, Plaintiff's implication of the First Amendment does not change the analysis of the Fourth and Fifth Amendment issues.

"Good faith has been an implicit requirement for investigations under the Fifth Amendment and searches under the Fourth Amendment." *United States v. Mayer*, 503 F.3d 740, 751 (9th Cir. 2007) "[G]ood faith [] requires that an investigation threatening First Amendment rights, like any government investigation, be justified by a legitimate law enforcement purpose that outweighs any harm to First Amendment interests." *Id.* at 753. Neither the Fifth Amendment requirement of good faith nor the Fourth Amendment warrant requirement "becomes more stringent in light of the threat to First Amendment values. Rather, the risk of a First Amendment violation is part of the analysis courts apply under the Fourth and Fifth Amendments." *Id.* at 754. Furthermore, "an application for a warrant authorizing the seizure of materials presumptively protected by the First Amendment should be evaluated under the same standard of probable cause used to review warrant applications generally." *New York v. P.J.*

*Video, Inc.*, 475 U.S. 868, 875 (1986).  The search and seizure of Plaintiff's property met these Fourth and Fifth Amendment standards.  *See infra* parts II.A.2.b and II.A2.c.

Likewise, the government's right to prevent publication of classified information is not a violation of the first amendment.  *See Stillman v. CIA,* 517 F. Supp.2d 32, 38 (D.D.C. 2007) ("[c]ourts have uniformly held that current and former government employees have no First Amendment right to publish properly classified information to which they gain access by virtue of their employment").  While Plaintiff may have been able to challenge the government's classification determination at the time she was seeking to publish her article, *see id.*, she does not appear to be currently seeking publication.

### b. Fourth Amendment.

Plaintiff's opposition brief also does not cure the deficiencies in Plaintiff's claim for violation of the Fourth Amendment.  Contrary to the allegation that the 2007 search of Plaintiff's property was based on unlawfully-obtained information, the affidavit in support of the Maryland search warrant establishes that the search was based on public records and information obtained from interviews of former NSA employee William Binney.  Plaintiff raises a number of complaints about the affidavit, but none of these establish a Fourth Amendment violation.[2]

Plaintiff claims that the affidavit improperly supposes that Plaintiff may have transmitted a 13 page summary of certain NSA technology to a reporter.  Plaintiff's argument is unavailing for a two reasons.  First, the affidavit does not just include mere speculation.  Rather, it includes the following information provided by Binney (much of which Plaintiff does not appear to

---

[2] Defendant is prepared to move for an order lifting the seal of the Oregon affidavit in support of the search of Plaintiff's property (which is virtually identical to the Maryland affidavit) in order to provide Plaintiff with a redacted copy of the affidavit. Defendant is also prepared to provide an unredacted copy of the affidavit to the Court for *in camera* review if the Court deems it necessary for adjudication of Defendant's motion to dismiss.

dispute): (1) Plaintiff created the summary in 2002 for purposes of a business idea she and her colleagues were contemplating, (2) Plaintiff and her colleagues emailed the summary to each other from their home computers, (3) Plaintiff said she had talked to a reporter about an article regarding the technology at issue, and (4) the summary was not submitted to the NSA for classification review. (Cox Decl., Ex. 4 at ¶¶ 24, 25.) In addition, the affidavit states that the NSA reviewed a copy of the summary (provided by Binney) and determined that the summary was classified. (*Id.* at ¶ 35.) This is sufficient to distinguish the affidavit from the warrant in *Nathanson v. United States*, 290 U.S. 41 (1933), which was supported only by "[m]ere affirmance of belief or suspicion." *Id.* at 47; *see also Illinois v. Gates*, 462 U.S. 213, 2390 (1983) ("An affidavit must provide the magistrate with a substantial basis for determining the existence of probable cause, and the wholly conclusory statement at issue in *Nathanson* failed to meet this requirement.")

Moreover, Plaintiff's argument that the government was not sure whether Plaintiff disclosed classified information to the reporter is misplaced in the context of a search warrant in which the standard is simply probable cause. The foregoing facts establish probable cause for a search. This is particularly true since, as the affidavit makes clear, the purpose of the investigation was not solely to determine if classified information had been leaked to the reporter to whom Plaintiff had spoken.

Plaintiff's other arguments suffer from a similar flaw. Plaintiff attacks the affidavit in large part on the basis that she did not have any criminal intent "and for this reason alone there was no probable cause of a crime." (Analysis of Aff. At 12.) The issue for Plaintiff's Fourth Amendment claim, though, is whether there was probable cause to conduct the 2007 search, not whether sufficient evidence of criminal intent existed to support a criminal charge.

Finally, Plaintiff claims that a conversation between herself and Binney that is described in paragraph 30 of the affidavit must have come from an illegal wiretap because Binney told Plaintiff that he "explicitly remembers that he forgot to tell the FBI" about the conversation. (Analysis of Aff at 21-22.) These allegations are mere speculation.

In sum, Plaintiff has failed to plead facts that establish a Fourth Amendment claim.

### c. Fifth Amendment.

Plaintiff argues that the criminal investigation violated her Fifth Amendment rights, but she fails to plead facts about the government's conduct during the investigation that would give rise to a Fifth Amendment claim. Plaintiff's Fifth Amendment claim is centered on allegations that the government offered her a plea to a criminal offense which she alleges she did not commit. But Plaintiff presents no authority for the proposition that a plea offer is a violation of the Fifth Amendment.

More generally, Plaintiff's primary complaint with the investigation is about its long duration and the accompanying uncertainty she experienced about whether she would be charged with any criminal offenses. But again Plaintiff presents no authority for the proposition that an open investigation is a violation of the Fifth Amendment.

### B. Plaintiff's Claim For Injunctive Relief Regarding the Government's Classification Process Should Be Dismissed.

Plaintiff's opposition brief fails to suggest a jurisdictional basis or a basis for a waiver of the government's sovereign immunity for Plaintiff's claim for injunctive relief regarding the government's classification process. Plaintiff does not indicate that she is bringing a claim under the Freedom of Information Act (FOIA), nor does she provide any reasons why FOIA is an inadequate remedy for individuals aggrieved by classification decisions.

Furthermore, it is not clear what relief Plaintiff is seeking in this claim. As Plaintiff acknowledges (Opp at 40-41), the government has recently taken and is continuing to take efforts to improve classification procedures. *See* Exec. Order No. 13556, 75 Fed. Reg. 68675 (Nov. 4, 2010); Exec. Order No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009); *see also* http://www.archives.gov/cui/documents/2011-doj-oip-cui-joint-issuance-on-foia.pdf.

Nonetheless, Plaintiff states that "[c]ourt-imposed requirements and deadlines could be very helpful to Administration task forces." (Opp. at 41.) She also suggests the establishment of a "truly independent board" to review government classification decisions. Plaintiff makes a specific allegation about the government's failure to respond to her appeal of the classification decision about the op-ed she authored, but she does not appear to be seeking mandamus relief to order the government to adjudicate the appeal or judicial review of the initial classification decision. *See Stillman,* 517 F. Supp.2d at 38 (reviewing CIA's classification decision on book authored by former government employee). Finally, there is not a ripe controversy for the Court to assume jurisdiction based on Plaintiff's suggestion that relief could assist her "in any future defense of action brought against her." (Opp. at 41.)

## V.     CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss all claims asserted in the Complaint except for the return of property claim pursuant to Federal Rule

/ / /

/ / /

/ / /

/ / /

/ / /

of Civil Procedure 12(b)(1) and 12(b)(6).

DATED this 16th day of January 2013.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney
District of Oregon


 /s/ James E. Cox, Jr.
JAMES E. COX, JR.
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **Reply Brief in Support of Motion to Dismiss All Claims Except Return of Property Claim** was placed in a postage prepaid envelope and deposited in the United States Mail at Portland, Oregon, on January 16, 2013, addressed to:

Diane Roark
2000 N. Scenic View Dr.
Stayton, OR 97383

And via email to:

gardenofeden@wvi.com

_/s/ James E. Cox, Jr._
JAMES E. COX, JR.