**S. AMANDA MARSHALL, OSB # 95347**
United States Attorney
District of Oregon
**JAMES E. COX, JR., OSB # 08565**
jim.cox@usdoj.gov
Assistant United States Attorney
United States Attorney's Office
District of Oregon
1000 SW Third Ave., Suite 600
Portland, Oregon 97204-2902
Telephone:     (503) 727-1026
Facsimile:      (503) 727-1117
        Attorneys for Defendant United States

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **DIANE ROARK,** | Case No.: 6:12-CV-01354-MC |
| Plaintiff, | **DEFENDANT'S MOTION FOR** |
| **v.** | **SUMMARY JUDGMENT AND** |
| | **MEMORANDUM IN SUPPORT** |
| **UNITED STATES OF AMERICA,** | |
| | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

        Defendant the United States of America, by S. Amanda Marshall, United States Attorney

for the District of Oregon, and through James E. Cox, Jr., Assistant United States Attorney for

the District of Oregon, submits the following motion for summary judgment pursuant to Federal

Rule of Procedure 56.  This motion is based on the accompanying memorandum in support, the

concurrently-filed declarations of Miriam P., Charles E.[1], Darren M. Dick, Kirsten M. Ruhland and Laura J. Pino, and the exhibits attached thereto, and all pleadings of record herein.  Pursuant to Local Rule 7-1, the parties made a good faith effort to resolve this dispute and have been unable to do so.

DATED this 30th day of September 2014.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney
District of Oregon

*/s/ James E. Cox, Jr.*
JAMES E. COX, JR.
Assistant United States Attorney
Attorneys for Defendant

---

[1] Section 6 of the National Security Agency Act of 1959, 50 U.S.C. § 3605 (Pub. L. No. 86-36) authorizes the National Security Agency (NSA) to protect from public disclosure, among other categories of information, the names of its employees.  Miriam P. and Charles E. occupy non-public positions with the NSA.  Thus, the names of these NSA employees are referred to by first name, last initial.  The Agency is prepared to provide the full name of any employee in an *ex parte*, under seal filing should the Court so require.

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................... 1

II.  FACTUAL AND PROCEDURAL BACKGROUND.................................................. 1

  A.   Plaintiff's Employment with HPSCI. ............................................................. 1

  B.   Classified Information and National Security Agency Act ("NSAA") Information. ...... 4

    1.   Classified Information. ....................................................................... 4

    2.   NSAA Information. ............................................................................. 5

  C.   The Criminal Investigation into Leaks of Classified Information About the Terrorist Surveillance Program........................................................................................ 7

  D.   The Government Has Returned All Property That Does Not Contain Classified or Protected Information. .................................................................................. 8

    1.   NSA review for classified and NSAA information. ................................. 8

    2.   HPSCI review for HPSCI information. ................................................ 10

  E.   Procedural History........................................................................................ 11

    1.   The Maryland action........................................................................ 11

    2.   This action. ....................................................................................... 13

III. STANDARD OF REVIEW ..................................................................................... 14

IV.  ARGUMENT ............................................................................................................ 15

  A.   The Government Is Entitled To Retain Seized Property in Which It Has a Continuing Interest or Right to Possession. ................................................... 15

  B.   The Government Is Entitled To Retain the Property Containing Classified Information. 16

  C.   The Government Is Entitled To Retain the Property Containing NSAA information. ... 18

  D.   The Government is Entitled to Retain the Property Containing HPSCI Information. .... 20

  E.   Plaintiff's Computer Cannot Be Returned Because It Is an Information Storage Media Classified at the TOP SECRET SCI Level. .......................................... 21

V.   CONCLUSION......................................................................................................... 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1194 (9th Cir. 2007) ........................ 7

*Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248 (1986) ......................................................... 14

*Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007) ................................................................. 19

*Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) ... 13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) .................................................................... 14

*Dept. of Navy v. Egan*, 484 U.S. 518, 528 (1988) ........................................................................ 4

*Gravel v. United States*, 408 U.S. 606, 621-22 n. 13 (1972) ...................................................... 21

*Hayden v. Nat'l Sec. Agency/Central Sec. Serv.*, 608 F.2d 1381, 1391 (D.C. Cir. 1979) ........... 19

*Kardoh v. United States*, 572 F.3d 697, 700 (9th Cir. 2009) ....................................................... 15

*Lahr v. Nat'l Transpo. Safety Bd.*, 569 F.3d 964, 985 (9th Cir. 2009) .............................. 6, 18, 19

*Minier v. C.I.A.*, 88 F.3d 796, 800 (9th Cir. 1996) ...................................................................... 19

*United States v. Fitzen*, 80 F.3d 387, 388 (9th Cir. 1996) ........................................................... 16

*United States v. Ibrahim*, 522 F.3d 1003, 1008 (9th Cir. 2008) .................................................. 15

*United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987) ............................................... 16

*United States v. Van Cauwenberghe*, 934 F.2d 1048, 1060-61 (9th Cir. 1991) .......................... 15

*Weinberger v. Catholic Action of Hawaii/Peace Educ. Project*, 454 U.S. 139, 145-46 (1981) ... 17

*Wiebe v. National Sec. Agency*, Civil Action No. RDB–11–3245, 2012 WL 1670046 (D. Md.
    May 11, 2012) .................................................................................................................... 12

*Wiebe v. National Sec. Agency*, Civil Action No. RDB–11–3245, 2012 WL 4069746 (D. Md.
    Sept. 14, 2012) ............................................................................................................. passim

## FEDERAL STATUTES

18 U.S.C. § 798 .......................................................................................................................... 17

5 U.S.C. § 552(b)(1) ................................................................................................................... 17

50 U.S.C. § 1803 .......................................................................................................................... 7

50 U.S.C. § 3161(a) .................................................................................................................... 16

50 U.S.C. § 3605 ............................................................................................................... 6, 19, 20

## FEDERAL RULES

Fed. R. Civ. P. 56(a) ................................................................................................ 14

Fed. R. Civ. P. 56(c) ................................................................................................ 14

Fed. R. Civ. P. 56(e) ................................................................................................ 14

## FEDERAL REGULATIONS

28 C.F.R. § 17.18(a) .................................................................................................. 5

## OTHER AUTHORITIES

Exec. Order No. 13470, 73 Fed. Reg. 45325 (July 30, 2008) ...................................... 6

Exec. Order No. 13526, 75 Fed. Reg. 707 (Jan. 5, 2010) ...................................... 4, 17

Rules of the House of Representatives, 113th Cong. (2013) ............................... 2, 3, 17

Rules of the Permanent Select Comm. on Intelligence, U.S. House of Representatives, 106th

    Cong. (1999) ................................................................................ 2, 3, 17, 20

Rules of the Permanent Select Comm. on Intelligence, U.S. House of Representatives, 113th

    Cong. (2013) .......................................................................................... 3, 20

# MEMORANDUM IN SUPPORT

## I.  INTRODUCTION

This case is a motion for the return of property seized by the government as part of a criminal investigation into a leak of classified information.  Plaintiff Diane Roark ("Plaintiff") is a retired staff employee of the House Permanent Select Committee on Intelligence ("HPSCI") who lives in Stayton, Oregon.  The government conducted a lawful search of Plaintiff's residence in July 2007 pursuant to a search warrant and seized various items – primarily documents referencing National Security Agency intelligence programs.  The criminal investigation has concluded and the government has returned much of the property that was seized from Plaintiff in the July 2007 search.

The only seized property that the government has not agreed to return to Plaintiff are 28 documents/notebooks, one compact disc (CD), and one desktop computer.  The government has not returned the foregoing property because it contains information that is either classified, protected by the National Security Agency Act of 1959, and/or protected by the non-disclosure agreements signed by Plaintiff.  The government has a continuing interest in ensuring that such information is not publicly disclosed.  This interest is sufficient to justify the government's retention of the property.  For this reason, Plaintiff's motion for return of property should be denied.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Plaintiff's Employment with HPSCI.

Plaintiff Diane Roark ("Plaintiff") worked on the staff of the House Permanent Select Committee on Intelligence ("HPSCI") from 1985 to 2002.  HPSCI is the committee to which the House refers "proposed legislation, messages, petitions, memorials, and other matters" relating to the "Central Intelligence Agency, the Director of National Intelligence, [] the National

Intelligence Program" and the "[i]ntelligence and intelligence-related activities of all other

departments and agencies of the Government." Rule X.11(b)(1), Rules of the House of

Representatives, 113th Cong. (2013) ("House Rules"), *available online*

http://clerk.house.gov/legislative/house-rules.pdf.  HPSCI is also responsible for "review and

study on a continuing basis laws, programs, and activities of the intelligence community and

shall review and study on an exclusive basis the sources and methods of [certain intelligence

agencies]."  House Rule X.3(m).

In the course of performing their jobs, HPSCI staff members are privy to sensitive

national security information.  (Declaration of Darren M. Dick ("Dick Decl." ¶ 3.)  Certain

restrictions apply to HPSCI staff in dealing with such information.  HPSCI rules in force during

Ms. Roark's employment stated that HPSCI staff "shall not . . . discuss or disclose:

> (A) the classified substance of the work of the Committee;
> (B) any information received by the Committee in executive session;[2]
> (C) any classified information received by the Committee from any source; or
> (D) the substance of any hearing that was closed to the public pursuant to these
> rules or the Rules of the House."

(Dick Decl., Ex. 1 at p. 8 (Rule 12(a)(1), 1999 Committee Rules); *id.* at p. 10, Rule 13(b) ("Any

classified information received by the Committee, from any source, shall not be disclosed . . .

.").)  This prohibition applies during a staff member's "tenure as a member of the Committee or

as Committee Staff, or anytime thereafter."  (*Id.* at p. 8, Rule 12(a)(1).)  Nearly identical rules

remain in force today.  (*Id.*, Ex. 2 at pp. 8-9, Rule 12(a)(1), Rules of the Permanent Select

---

[2] An "executive session" is a committee meeting or hearing that is closed to the public.
Committee meetings may be closed if disclosure of the matters to be discussed may "endanger
national security" or "compromise sensitive law enforcement information." (Dick Decl., Ex. 1 at
p. 3 (Rule 5(b), Rules of the Permanent Select Comm. on Intelligence, U.S. House of
Representatives, 106th Cong. (1999) ("1999 Committee Rules"); *see also* House Rule XI.2(g)(1)
(authorizing committees to conduct meetings in executive session).

Comm. on Intelligence, U.S. House of Representatives, 113th Cong. (2013) ("2013 Committee Rules").)

Furthermore, HPSCI staff members are required to sign a non-disclosure agreement ("NDA") before joining the committee staff in which they promise "not to divulge any classified information which comes into [their] possession while a member of the Committee Staff" except in authorized circumstances. (*Id.*, Ex. 1 at p. 9, Rule 12(b)(1) of 1999 Committee Rules; House Rules X.11(e) (stating that HPSCI employees may not have access to classified information unless they agree in writing to follow House and committee rules "concerning the security of classified information during and after the period of the[ir] employment").)

Plaintiff signed NDAs with HPSCI at the beginning of her employment in 1985 and again in 1999. (Dick Decl. Exs. 3, 4.) In executing the NDA, Plaintiff agreed to be bound by the rules of the House and the HPSCI Rules of Procedure. (*Id.*, Ex. 4 at ¶ 7.) By those NDAs, Plaintiff further agreed she would "never divulge, publish, or reveal by writing, word, conduct, or otherwise, either during [her] tenure with the HPSCI or anytime thereafter" any:

- "[T]estimony given before the HPSCI in executive session, including the names of any witness who appeared before the HPSCI in executive session,"
- "Material, restricted data, . . . or information received or generated by the HPSCI that has been identified under established HPSCI security procedures, by Executive Order, by the Director of Central Intelligence (DCI), or otherwise by statute, as requiring protection from unauthorized disclosure," and
- "Any information classified pursuant to any Executive Order, by the DCI, or otherwise by statute, which might otherwise come into [her] possession."

(*Id.* at ¶¶ 2, 13.) Ms. Roark also agreed that she would "surrender to the HPSCI . . . upon [her] separation from the HPSCI staff" all "information, material, or restricted data" in the foregoing categories. (*Id.* at ¶ 7.)

**B.      Classified Information and National Security Agency Act ("NSAA") Information.**

**1.      Classified Information.**

"Since World War I, the Executive Branch has engaged in efforts to protect national security information by means of a classification system graded according to sensitivity." *Dept. of Navy v. Egan*, 484 U.S. 518, 528 (1988).  By executive order, the President has established "a uniform system for classifying, safeguarding, and declassifying national security information, including information relating to defense against transnational terrorism." Exec. Order No. 13526, Part 1, Sec. 1.2(a), 75 Fed. Reg. 707 (Jan. 5, 2010).

Certain prerequisites must be met for information to be deemed classified.  Most importantly, an original classification authority must "determine[] that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security." *Id.* at Sec. 1.1(a)(4).  Furthermore, classified information must be "owned by, produced by or for, or [be] under the control of the United States Government." *Id.* at Sec. 1.1(a)(2).  In addition, classified information must pertain to one of eight topics, one of which is "intelligence activities (including covert action), intelligence sources or methods, or cryptology." *Id.* at Sec. 1.4.

An original classification authority can classify information at any of three levels – Confidential, Secret and Top Secret.  *Id.* at Sec. 1.2.  The classification level is based on the amount of damage to national security that reasonably could be expected to occur based on unauthorized disclosure of the information.  *Id.*  Unauthorized disclosure of Confidential information could reasonably be expected to cause damage to national security, unauthorized disclosure of Secret information could reasonably be expected to cause serious damage to national security, while unauthorized disclosure of Top Secret information could reasonably be expected to cause exceptionally grave damage to national security.  *Id.*

Classified information can also receive an additional designation of "sensitive compartmented information" (or "SCI") if it "not only is classified for national security reasons as Top Secret, Secret, or Confidential, but also is subject to special access and handling requirements because it involves or derives from particularly sensitive intelligence sources and methods." 28 C.F.R. § 17.18(a). One subcategory of SCI is "SI," a marking used to protect certain Communications Intelligence. (Declaration of Miriam P. ("Miriam P. Decl.") ¶ 7.) Communications Intelligence is SCI that was derived from exploiting cryptographic systems or other protected sources by applying methods or techniques, or from intercepted foreign communications. (*Id.*)

Because of the exceptional sensitivity and vulnerability of SCI, the government utilizes safeguards and access requirements that exceed the access standards that are normally required for information of the same classification level. (*Id.*) Less than one year before her retirement from HPSCI, Roark signed an additional NDA regarding her obligations with respect to SCI. (Exhibit 1, attached hereto.) That NDA includes provisions in which Plaintiff:

- agreed not to divulge SCI (¶ 3);
- agreed to submit for security review any writings that contain or purport to contain any SCI or description of activities that produce or relate to SCI (¶ 4);
- agreed to return all materials containing SCI at the conclusion of her employment (¶ 8);
- stipulated that all information to which she obtains access by signing the Agreement will remain the property of the United States Government unless and until otherwise determined by an appropriate official or final ruling of a court of law. (¶ 8.)

(*Id.*) The conditions and obligations imposed by the NDA applied during the time Plaintiff was granted access to SCT, "and at all times thereafter." (*Id.* at ¶ 9.)

### 2. NSAA Information.

The National Security Agency ("NSA") is a government agency responsible for "collect[ing] (including through clandestine means), process[ing], analyz[ing], produc[ing] and

disseminat[ing] signals intelligence information and data for foreign intelligence and counterintelligence purposes" and for "establish[ing] and operat[ing] an "effective unified organization for signals intelligence activities." *See* Exec. Order No. 13470, at Sec. 1.7(c)(2), 73 Fed. Reg. 45325, 45335 (July 30, 2008). In performing its signals intelligence mission, NSA exploits foreign signals to obtain intelligence information necessary to the national defense, national security, or the conduct of foreign affairs. (Miriam P. Decl., ¶ 5.) NSA has developed a sophisticated worldwide signals intelligence collection network that acquires, among other things, foreign and international electronic communications. (*Id.*) The technological infrastructure that supports the NSA's foreign intelligence information collection network has taken years to develop at a cost of billions of dollars and untold human effort. (*Id.*) It relies on sophisticated collection and processing technology. (*Id.*)

Congress has specifically recognized the inherent sensitivity of the activities of the NSA by enacting laws to protect the fragile nature of the NSA's signals intelligence efforts. (*Id.* at ¶ 14.) One of these laws is a statutory privilege specific to the NSA. (*Id.*) The NSA's statutory privilege is set forth in section 6 of the National Security Agency Act of 1959, Public Law 86-36, 50 U.S.C. § 3605. (*Id.*) Section 6 of the NSA Act provides that "[n]othing in this Act or any other law . . . shall be construed to require the disclosure of the organization or any function of the National Security Agency, or any information with respect to the activities thereof, or of the names, titles, salaries, or number of the persons employed by such agency." 50 U.S.C. § 3605. Information need not be classified to fall within the purview of 50 U.S.C. § 3605, and such information (hereinafter "NSAA information") is exempt from disclosure under the Freedom of Information Act ("FOIA"). *See Lahr v. Nat'l Transpo. Safety Bd.,* 569 F.3d 964, 985 (9th Cir. 2009).

**C. The Criminal Investigation into Leaks of Classified Information About the Terrorist Surveillance Program.**

Following the September 11, 2001 attacks on the United States, President George W. Bush established the Terrorist Surveillance Program ("TSP"), authorizing the NSA to intercept international communications into and out of the United States of persons linked to al Qaeda or related terrorist organizations. (Declaration of Laura Pino ("Pino Decl."), Ex. 1 at ¶ 7.)[3] On December 15, 2005, the New York Times began publishing a series of articles describing a range of alleged NSA activities, including the TSP. (*Id.* at ¶ 9.) Shortly after the first TSP article, the Department of Justice and the FBI initiated an investigation concerning the unauthorized disclosure of classified information contained in that article. (*Id.* at ¶ 12.) That investigation involved interviews of in excess of 1,000 individuals, issuance of more than 200 grand jury subpoenas, principally for telephone and email records, and review of thousands of pages of documents, including telephone and email records for approximately 60 individuals. (*Id.*) Through that process, among the individuals identified as subjects of the investigation were Roark and four former employees of the NSA – William Binney ("Binney"), Thomas Drake ("Drake"), Edward Loomis ("Loomis"), and John Wiebe ("Wiebe"). (*Id.* at ¶ 13.)

In July 2007, the government applied for and obtained warrants to search the homes of Binney, Loomis, Wiebe, and Roark for evidence related to the criminal investigation. (*Id.* at ¶ 53.) On July 26, 2007, the FBI executed the search warrants. The FBI seized a variety of items in Roark's possession, including a desktop computer, a cell phone, a fax machine, and a

---

[3] In January 2007, the Attorney General announced that any electronic surveillance that was occurring under the TSP would henceforth be conducted subject to the approval of the Foreign Intelligence Surveillance Court, *see* 50 U.S.C. § 1803, and that the President's authorization of the TSP had lapsed. *See, e.g., Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1194 (9th Cir. 2007).

number of papers, folders, and notebooks.  (*Id.* at Ex. 2.)  A lawful search was also conducted later in the year on Drake's residence.

No criminal charges were filed against Binney, Loomis, Wiebe, or Roark as a result of the investigation.  A criminal case initiated against Drake in the District of Maryland resulted in a guilty plea to a misdemeanor charge of exceeding authorized use of a computer and dismissal of felony charges.  *See United States v. Drake*, District of Maryland, Case No. 1:10–cr-181-RDB.

**D.  The Government Has Returned All Property That Does Not Contain Classified or Protected Information.**

The FBI has returned all of the seized property that does not contain classified information, NSAA information, and/or information protected by Plaintiff's NDA with HPSCI ("HPSCI information").  (Pino Decl., ¶ 4; Miriam P. Decl., ¶¶ 12, 15; Dick Decl., ¶ 8.)  The property that the FBI has not returned to Plaintiff consists of 28 paper documents/notebooks, one CD, and one desktop computer.  (Pino Decl., Ex. 3.)

**1.  NSA review for classified and NSAA information.**

Miriam P., the Deputy Chief of Staff for Policy and Corporate Issues for the Signals Intelligence Directorate of the NSA and an original classification authority, has performed a classification review of some of the items retained by the government from the 2007 search and seizure.  (Miriam P. Decl., ¶ 11.)  Based on this review, Miriam P. has determined that four of the paper documents that the government retains contain information properly classified at the SECRET level.  (*Id.* at ¶ 12.)  These four documents include three copies of a four page document Plaintiff submitted to the NSA for permission to publish, and one 18 page set of Commander Naval Security Group slides.  (*Id.*)

The category of classified information to which the four documents listed above pertain is intelligence activities (including covert action), intelligence sources and methods, or cryptology. (*Id.* at ¶ 13.) Disclosure of the classified information in these documents reasonably could be expected to cause serious damage to United States national security by compromising SIGINT intelligence sources, methods and/or activities. (*Id.*)

Specifically, the 18-page set of slides contains Electronic Intelligence (ELINT) information. (*Id.*) Electronic Intelligence, a subset of Signals Intelligence, is technical and intelligence information derived from foreign non-communications electronic signals, such as radars and radar-jamming signals. (*Id.*) The three copies of the four page document contain Communications Intelligence (COMINT) information, which is technical and intelligence information derived from foreign communications signals and data. (*Id.*) This COMINT information is also Sensitive Compartmented Information (SCI). (*Id.*, ¶¶ 7, 13.)[4]

Miriam P. has also concluded that another 18 of the paper documents/notebooks that the government still retains from the search and seizure contain NSAA information, as does the one CD. (*Id.*, ¶¶ 15.) These items contain the names and/or contact information for NSA employees. (*Id.* ¶ 16.)[5]

Finally, the NSA has also analyzed the hard drive on the desktop computer drive seized from Plaintiff's residence to identify whether any classified information or NSAA information was present. (Declaration of Charles E. ("Charles E. Decl."), ¶ 3.) To perform this analysis,

---

[4] In addition to the four paper documents that the NSA determined contain classified information, the U.S. Navy has determined that another paper document also contains classified information. (Declaration of Kirsten M. Ruhland, ¶¶ 1-2.) Thus, five of the paper documents have been deemed to include classified information.

[5] Due to the length of some of these documents and the difficulty in reading some of the hand-written notes, Miriam P. only confirmed the presence of NSAA information in at least one location of each item. (*Id.*, ¶¶ 15 n. 2.) Thus, it is possible these items may also contain classified information. (*Id.*)

Charles E. – a computer forensic examiner with the NSA – performed an initial search of data in Plaintiff's user profile directory using a set of search terms designed to identify potentially classified or NSAA information. (*Id.* at ¶¶ 3, 4.) This initial search was only conducted of the user profile directory and did not include other directories, such as the directories that appear to include more than 10,000 America On-Line (AOL) emails. (*Id.* at ¶ 3.) Charles E. identified 53 files that were responsive to the search terms, and provided four of the potentially classified items to Miriam P. for review. (*Id.* at ¶ 4.) Miriam P. determined that the four files included information that is properly classified as "TOP SECRET" (Miriam P. Decl. at ¶ 17.) The classified information on Plaintiff's computer was information that involves intelligence activities (including covert action), intelligence sources and methods, or cryptology. (*Id.* at ¶ 18.) Disclosure of the classified information reasonably could be expected to cause exceptionally grave damage to United States national security by compromising SIGINT intelligence sources, methods and/or activities. All four files contain Communications Intelligence information, which is Sensitive Compartment Information (SCI). (*Id.* at ¶¶ 17-18.)

## 2. HPSCI review for HPSCI information.

Darren M. Dick, the Staff Director of the HPSCI, has also reviewed some of the information retained by the government to determine whether any of the documents contain HPSCI information (i.e., testimony given before HPSCI in executive session, information received or generated by HPSCI that has been identified as requiring protection from unauthorized disclosure (under established HPSCI security procedures, by Executive Order, by the Director of Central Intelligence, or otherwise by statute ), or classified information). (Dick Decl., ¶ 8, *see also id.*, Ex. 4.) Based on this review, Mr. Dick determined that 16 of the items

the government retains from the 2007 search contain HPSCI information. (*Id.* at ¶ 8.) [6] Of those

16 items:

- Five are protected because they include information received or generated in HPSCI executive-session,
- Six are protected because they contain information that has been identified under established HPSCI security procedures, by Executive Order, by the Director of Central Intelligence, or otherwise by statute as requiring protection from disclosure, and
- Five are protected they include information received or generated in HPSCI executive-session *and* because they contain information that has been identified as requiring protection from disclosure. (*Id.*) [7]

Furthermore, at least six of the items existed prior to Plaintiff's retirement from HPSCI and

therefore should have been surrendered to HPSCI at that time pursuant to paragraph 7 of

Plaintiff's non-disclosure agreement. (*Id.* at ¶¶ 8, 9.)

## E. Procedural History.

### 1. The Maryland action.

In November 2011, Wiebe filed a motion in the U.S. District Court for the District of

Maryland under Federal Rule of Criminal Procedure 41(g) for the return of his property seized in

the July 2007 search of his residence. *See Wiebe v. Nat'l Security Agency, et al.*, District of

Maryland Case No. 1:11-cv-3245 (hereinafter, "the Maryland Action"). Binney, Loomis, Roark

and Drake each filed motions to consolidate in which they requested return of the property seized

during the searches of their residences. The government moved to dismiss Roark from the

Maryland Action for improper venue because the search of her property occurred in Oregon

---

[6] These 16 items include some items that are also subject to a claim of protection by the NSA. Exhibit 3 to the Declaration of Laura J. Pino is a chart that sets forth the items that have not been returned and the claims asserted for those items. The chart also includes nine items that were recently returned to Plaintiff or are in the process of being returned. The government notes that the document labeled "HC38" was sent by the FBI to undersigned counsel today and counsel will forward it to Plaintiff immediately upon receipt.

[7] The Navy completed its classification review of document "HC3" after Mr. Dick executed his declaration. Based on the Navy's review of HC3, HPSCI would likely view that document as "requiring protection from disclosure" as well, which would raise to six the number of items that are protected under both HPSCI grounds.

pursuant to a subpoena issued in the District of Oregon. The Maryland court granted the motion and dismissed Roark from the case. *See Wiebe v. National Sec. Agency*, Civil Action No. RDB–11–3245, 2012 WL 1670046 (D. Md. May 11, 2012)

Following Roark's dismissal from the litigation, the parties filed dispositive motions on the claims of the remaining petitioners in the Maryland Action. The government claimed that certain property need not be returned because it contained (1) classified information, (2) NSAA information, or (3) government information controlled by other government agencies ("OGA information"). The district court granted the government's motion in relevant part. (Exhibits 2, 3 attached hereto, *Wiebe v. National Sec. Agency*, Civil Action No. RDB–11–3245, 2012 WL 4069746 (D. Md. Sept. 14, 2012); *recommendation aff'd* docket # 78 (D. Md. Mar. 27, 2013).)[8]

Specifically, the Maryland court ruled that the government's determination that seized documents contained classified or NSAA information was not subject to judicial review and that the presence of such information in any seized property was a sufficient ground for the government to retain such property. *Id.* at * 3-6. The Court held that the government also has a continuing interest in OGA information; however, the evidentiary record was not sufficient to establish whether the government was entitled to retain the property labled as OGA information. *Id.* at *9.

The Maryland court also noted that petitioners' argument that the searches were unlawful was irrelevant. The court observed that Fed. R. Cr. P. 41(g) "provides a remedy to petitioners who have been aggrieved by an unlawful search and seizure *or* by a deprivation of property." *Id.* at *9 (emphasis in original). Since the petitioners had "already established a deprivation of property, . . . establishing an unlawful search or seizure [was] unnecessary." *Id.* Thus, the only

---

[8] The government requests that the Court take judicial notice of any pleadings and orders issued in the Maryland Action pursuant to Federal Rule of Evidence 201.

remaining issue was whether the government "has a continuing interest in the classified, NSAA, and OGA information, and establishing a Fourth Amendment violation would not diminish or vitiate this interest." *Id.*

Following the summary judgment ruling, the Maryland Court allowed the petitioners to accept the government's offer to return any unprotected information on the petitioners' computer that the petitioners wished to be reviewed for return. *Id.* at *10. That process has been completed for petitioners Wiebe, Binney and Loomis, and is nearing completion for petitioner Drake.

### 2. This action.

On July 26, 2012, Roark filed her complaint in this action. As she did in the Maryland Action, Plaintiff "seeks return of her remaining property, except those items that she has said need not be returned." (Docket ("Dkt.") # 1, Complaint at ¶ 14.) Plaintiff sought this relief, though, "only if necessary under an associated Rule 41(g) action following resolution of constitutional issues." (*Id.*) The "constitutional issues" involved requests for declaratory and injunctive relief and damages. (*Id.* at ¶¶ 11-13.)

The government moved to dismiss all claims except the return of property claim on the ground that plaintiff lacked standing and the Court lacked jurisdiction. (Dkt. # 8.) Plaintiff subsequently moved to amend her complaint to add constitutional claims for damages under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). (Dkt. # 18.) Plaintiff also requested dismissal of her constitutional claims if the Court denied the motion for leave to amend. (*Id.* at p. 4 ("Should the Court refuse to approve this amended complaint, Plaintiff requests a voluntary dismissal of the constitutional aspects of her lawsuit without prejudice, and a continuance of the Rule 41 (g) return of property lawsuit.").)

This Court denied Plaintiff's motion for leave to amend on the grounds that the proposed *Bivens* claims were barred by the statute of limitations and failed to state a claim for relief. (Dkt # 35.) The Court granted Plaintiff's request to voluntarily withdraw the constitutional claims in the case, "leaving for litigation a Fed. R. Crim. P. 41(g) lawsuit for return of property." (*Id.* at p. 14.)

## III.    STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56, "[a] party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate where the evidence "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Materiality of a fact is determined from the substantive law governing the claim. *See Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248 (1986).  Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are "material." *Id.*  A dispute concerning a material fact is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248-49.  The substantive law distinguishes critical facts from irrelevant facts, and only disputes over facts that might affect the outcome will preclude summary judgment. *Id.* at 248.  The moving party bears the burden to establish the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 247; *Celotex*, 477 U.S. at 323.  Once the moving party meets this burden, the nonmoving party may not rest on the allegations of the pleadings but must by affidavit or other evidence set forth specific facts that show a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 256.

# IV.    ARGUMENT

The FBI has returned most of the property that was seized from Plaintiff's residence

during the July 25, 2007 search.  The remaining items that have not been returned – 28 paper

documents/notebooks, one CD, and a computer hard drive – all contain classified information,

information protected under the National Security Agency Act of 1959, ("NSAA information"),

and/or information protected by HPSCI in its non-disclosure agreement with Plaintiff ("HPSCI

information").  The government has a continuing interest in this information that justifies its

retention of this information.  Thus, Plaintiff's motion for return of property should be denied.

## A.    The Government Is Entitled To Retain Seized Property in Which It Has a Continuing Interest or Right to Possession.

Federal Rule of Criminal Procedure 41(g) provides as follows:

> Motion to Return Property.  A person aggrieved by an unlawful search and
> seizure of property or by the deprivation of property may move for the property's
> return.  The motion must be filed in the district where the property was seized.
> The court must receive evidence on any factual issue necessary to decide the
> motion.  If it grants the motion, the court must return the property to the movant,
> but may impose reasonable conditions to protect access to the property and its use
> in later proceedings.

"Where no criminal proceeding is pending, a district court has discretion to hear a motion for the

return of property as a civil equitable proceeding."  *See Kardoh v. United States*, 572 F.3d 697,

700 (9th Cir. 2009).  Once a Rule 41(g) motion is treated as a civil complaint, the district court is

"required to apply the Federal Rules of Civil Procedure."  *United States v. Ibrahim*, 522 F.3d

1003, 1008 (9th Cir. 2008).

"Ordinarily, property seized for purposes of a trial that is neither contraband nor subject

to a forfeiture statute is to be returned to the defendant at the end of the trial."  *United States v.

Van Cauwenberghe*, 934 F.2d 1048, 1060-61 (9th Cir. 1991).  "[W]hen the property in question

is no longer needed for evidentiary purposes, either because trial is complete, the defendant has

pleaded guilty, or [] the government has abandoned its investigation, the burden of proof

changes." *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987). "The person from

whom the property is seized is presumed to have a right to its return, and the government has the

burden of demonstrating that it has a legitimate reason to retain the property." *Id.* "The

government, however, may overcome this presumption by demonstrating a cognizable claim of

ownership or right to possession adverse to that of [the defendant]." *United States v. Fitzen*, 80

F.3d 387, 388 (9th Cir. 1996) (internal quotations omitted); *Wiebe*, 2012 WL 4069746 at *5

("Pursuant to Rule 41(g), courts must determine if the government's retention of seized property

is 'reasonable,' and must balance the government's need to retain the property against the

individual's right to use the property.")

**B.      The Government Is Entitled To Retain the Property Containing Classified
         Information.**

The government has a continuing interest in classified information, regardless of where it

is located or who possesses it. This interest is demonstrated by the numerous laws and

regulations restricting access to and disclosure of classified information, and the promises

required of and made by executive and congressional employees (including Plaintiff) who handle

classified information.

With respect to access to classified information, the President is required by law to

"establish procedures to govern access to classified information which shall be binding upon all

departments, agencies, and offices of the executive branch of Government." 50 U.S.C.

§ 3161(a). Pursuant to this authority, the President has mandated that a person may only receive

access to classified information if an agency has determined that the person is eligible, the person

has signed a non-disclosure agreement, and the person needs to know the information. Exec.

Order No. 13526, at Part 1, Sec. 4.1(a).  Congress has enacted similar restrictions for its

employees.  *See* House Rule XXIII.13; Dick Decl., Ex. 2 (Rule 14 of 1999 Committee Rules).

Furthermore, the government's interest in classified information is also demonstrated by

the restrictions it places on disclosure of classified information.  "Classified information may not

be removed from official premises without proper authorization," and an "employee leaving

agency service may not remove classified information from the agency's control."  Exec. Order

No. 13526, at Part 1, Sec. 4.1; *see also* Dick Decl., Ex. 2 (Rules 12, 13 of 1999 Committee

Rules).  Likewise, classified information is protected from disclosure under the first exemption

of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(1).  *See Weinberger v. Catholic

Action of Hawaii/Peace Educ. Project*, 454 U.S. 139, 145-46 (1981).  And, under certain

circumstances, the unauthorized disclosure of classified information is a crime.  18 U.S.C. § 798.

The government's interest in classified information is also demonstrated by the non-

disclosure agreements the government required Plaintiff to execute as a condition for providing

access to classified information.  Plaintiff acknowledged that she "understand[s] that all

information to which I may obtain access by signing this Agreement is now and will remain the

property of the United States Government unless and until otherwise determined by an

appropriate official or final ruling of a court of law."  (Exhibit 1; *see also* Dick. Decl., Ex. 3, 4.)

The government's continuing interest in classified information warrants denial of

Plaintiff's claim for return of the documents that contain classified information.  The classified

information in the documents and computer files seized from Plaintiff involves intelligence

activities (including covert action), intelligence sources and methods, or cryptology.  (Miriam P

Decl. at ¶¶ 12-13, 19-20.)  Most of the classified documents contain Communications

Intelligence information that is protected within special intelligence (SI), which is a form of

Secure Compartmented Information (SCI).  (*Id.*, ¶¶ 7, 13.)  Disclosure of the classified

information in these documents reasonably could be expected to cause serious or exceptionally

grave damage to United States national security by compromising SIGINT intelligence sources,

methods and/or activities.  (*Id.*)

Plaintiff has acknowledged the government's ownership interest in SCI in the non-

disclosure agreements she signed.  (Ex. 1, ¶ 8; Dick Decl., Exs. 3, 4, ¶¶ 7, 10.)  In addition, at

least six of the paper documents predate the end of Plaintiff's employment with HPSCI and,

thus, her possession of them violates the terms of the non-disclosure agreements.  (Ex. 1, ¶ 8 ("I

agree that I shall return all materials that have come into my possession or upon the conclusion

of my employment or other relationship with the United States Government entity providing me

access to such materials."); Dick Decl., Ex. 4, ¶ 7 ("I hereby agree to surrender . . . upon my

separation from the HPSCI staff, all information, material, or restricted data . . . .")

In the return of property case in the district of Maryland that arose from the same

criminal investigation, the district court concluded that "[t]he Government has established as a

matter of law that the information it deems to be classified or NSAA information . . . cannot be

returned to Petitioners."  *See Wiebe*, 2012 WL 4069746 at *9.  The Maryland court's conclusion

was correct, and this Court should reach the same conclusion.

## C.     The Government Is Entitled To Retain the Property Containing NSAA information.

The reasons that the government has a continuing interest in classified information apply

equally to unclassified NSAA information.  *See Wiebe*, 2012 WL 4069746 at *6.  When the NSA

declines to disclose NSAA information, "[t]he agency need not make a 'specific showing of

potential harm to national security' because 'Congress has already, in enacting the statute,

decided that disclosure of NSA activities is potentially harmful.'"  *Lahr*, 569 F.3d 964, 985 (9th

Cir. 2009) (*quoting Hayden v. Nat'l Sec. Agency/Central Sec. Serv.*, 608 F.2d 1381, 1391 (D.C.

Cir. 1979)); *Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007) (noting that the NSAA provides intelligence agencies with a "near-blanket" FOIA exemption).

Nineteen of the items that the government still retains from the 2007 search contain the names and/or contact information for NSA employees. (Miriam P. Decl. at ¶¶ 15-16.) Such information is specifically protected by the NSAA. *See* 50 U.S.C. § 3605 ("Nothing in this Act or any other law . . . shall be construed to require the disclosure of . . . the names, titles, salaries, or number of the persons employed by such agency.")

The government's continuing interest in NSAA information justifies the government's retention of such information. *See Wiebe*, 2012 WL 4069746 at *6; *see also Berman*, 501 F.3d at 1140 (upholding government withholding of NSAA information in FOIA litigation); *Lahr*, 569 F.3d at 985 (same). Plaintiff has acknowledged the government's interest in NSAA information in the NDA she signed with HPSCI. (Dick Decl., Ex. 4 at ¶ 2 ("I will never divulge, publish, or reveal by writing . . . information received or generated by HPSCI that has been identified . . . by statute, as requiring protection from unauthorized disclosure . . . .").)

The Ninth Circuit's decision in *Minier v. C.I.A.*, 88 F.3d 796, 800 (9th Cir. 1996), demonstrates the government's interest in the property at issue here. In *Minier*, the CIA denied the plaintiff's FOIA request to disclose whether the CIA previously had an employment relationship with a certain individual. The Ninth Circuit held that the CIA's denial was appropriate under FOIA Exemption 3 because "the plain language of [50 U.S.C.] §§ 403–3(c)(5) and 403g expressly provides that the CIA is exempted from disclosing the names of its employees." *Id.* at 801. Likewise, the NSAA information in the documents retained from the 2007 search and seizure is unquestionably information that is protected under the plain language

of 50 U.S.C. § 3605.  As such, Plaintiff's claim for return of property containing such information should be denied.

**D.      The Government is Entitled to Retain the Property Containing HPSCI Information.**

Congress also has a continuing interest in ensuring the confidentiality of classified and protected information utilized and generated by its members and staff.  This is reflected in the steps Congress has taken to protect such information, include enacting rules regarding confidentiality and requiring that staff sign non-disclosure agreements.

HPSCI rules prohibit the unauthorized disclosure of: the classified substance of the work of HPSCI, any information received by HPSCI in executive session, any classified information received by HPSCI, and the substance of any hearing that was closed to the public.  (Dick Decl., Ex. 2 (1999 Committee Rule 12(a)(1)); *see also id.* Ex. 3 (2013 Committee Rule 12(a)(1) (same)).)

HPSCI staffers (including Plaintiff) acknowledge the foregoing confidentiality requirements by executing non-disclosure agreements.  In her non-disclosure agreement, Plaintiff agreed "never to divulge, publish, or reveal by writing, word, conduct, or otherwise, either during [her] tenure with the HPSCI or anytime thereafter . . . any testimony given before the HPSCI in executive session, including the name of any witness who appeared or was called to appear before the HPSCI in executive session."  (Dick Decl., Ex. 4 at ¶ 2.)  She also agreed not to disclose any "material, restricted data, . . . or information received or generated by the HPSCI that has been identified under established HPSCI security procedures, by Executive Order, by the Director of Central Intelligence (DCI), or otherwise by statute, as requiring protection from unauthorized disclosure . . . ."  (*Id.*)  That category included not just classified information, but also information marked "For Official Use Only," based on the Director of Central Intelligence's determination that information required protection from unauthorized disclosure.  (*Id.* at ¶ 7.)

She further "agree[d] to surrender to the HPSCI . . . upon [her] separation from the HPSCI staff" all material containing such testimony or information. (*Id.*, Ex. 4 at ¶ 7.)

Fifteen of the paper documents and the one compact disc that the government retains from the 2007 search contain information implicated by the foregoing promises. (Dick Decl. ¶ 8.) Furthermore, at least five of the documents and the compact disc are items that existed prior to Plaintiff's retirement from HPSCI and therefore should have been surrendered to HPSCI at that time pursuant to paragraph 7 of Plaintiff's non-disclosure agreement. (*Id.* at ¶¶ 8, 9.)

Plaintiff is not entitled to the return of these documents. Under the terms of HPSCI Rules and the non-disclosure agreement Plaintiff signed, this property contains confidential information which belongs to HPSCI. (Dick Decl., Ex. 2; *id.* at Ex. 4, ¶¶ 2, 7.)[9]

**E.      Plaintiff's Computer Cannot Be Returned Because It Is an Information Storage Media Classified at the TOP SECRET SCI Level.**

As noted earlier, *supra* part II.D.1., Plaintiff's computer hard drive contains at least four files that include classified information. (Miriam P. Decl., ¶ 17.) According to NSA Policy, an information storage media such as Plaintiff's computer hard drive is classified at the highest level of classification of data contained therein. (*Id.* at ¶ 19.) Thus, because Plaintiff's computer contains files with TOP SECRET SCI information, the hard drive is classified at the TOP SECRET SCI level. (*Id.*)

---

[9] Plaintiff may assert that legislative privilege applies to her return of property claim, but it is well established that Congress itself controls legislative privilege, not individual Congressional employees. *See Gravel v. United States*, 408 U.S. 606, 621-22 n. 13 (1972) (noting that a Senator's aide's invocation of legislative privilege "can be repudiated and thus waived by the Senator"). In this case, HPSCI has decided not to assert any claim of legislative privilege over the property at issue. Similarly, Plaintiff's contention that HPSCI's mere review of the seized property somehow constitutes a violation of her rights is also unfounded. The NSA does not have the authority to agree to the release of information which originated from another federal entity absent the consent of the originator. (Miriam P. Decl. ¶ 9.) Furthermore, Plaintiff's HPSCI NDA provides a clear basis for HPSCI to review the information at issue. (Dick Decl., Ex. 4 at ¶ 7 (agreeing to surrender protected information to HPSCI).

The government is not able to simply delete the files containing classified information from the hard drive and return the hard drive to Plaintiff. That is because various complications can, and do, subvert the complete effectiveness of techniques designed to overwrite deleted files. (Charles E. Decl. ¶ 6.) For example, technical issues within hard drives, such as unreadable, or "bad", sectors can prevent traditional forensic tools from accessing those areas. (*Id.*) The government is not aware of a technical solution that completely ensures the removal of data from a computer hard drive that does not result in the total destruction and inability to use the computer. (*Id.*)

Although the government cannot return Plaintiff's computer without first erasing all of the data off of it, the government is willing and able to return any non-classified and non-protected common user files on identified areas of the computer to Plaintiff via portable storage media (such as a CD or DVD). Prior to returning any computer files, the government is prepared to conduct an automated search of the files using a key word list designed to identify classified or protected information. Any files that do not result in a "hit" on this key word list could be returned to Plaintiff without any further review, while any files that do return a "hit" would need to be reviewed by the NSA and/or HPSCI to determine whether the files contain classified or protected information. Any files which do not contain classified or protected information based on this manual review can also be returned to Plaintiff on portable storage media.[10]

---

[10] The government also notes that it has no desire to preserve or maintain the property containing classified or protected information that it has not returned. (Dick Decl. ¶ 11; Miriam P. Decl. ¶ 20.) The government's interest in such property is solely in ensuring the non-disclosure of sensitive information related to national security. (*Id.*) Thus, the government is willing to agree to destroy any property containing classified or protected information not returned to Plaintiff, to the extent that will address any concerns Plaintiff may have about the ultimate disposition of such property. (*Id.*)

## V.     CONCLUSION

For the foregoing reasons, Plaintiff is not entitled to return of the property retained by the government.  Thus, Defendant respectfully requests that the Court grant Defendant's motion for summary judgment, deny Plaintiff's motion for return of property, and dismiss this action with prejudice.

DATED this 30th day of September 2014.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney
District of Oregon

*/s/ James E. Cox, Jr.*
JAMES E. COX, JR.
Assistant United States Attorney
Attorneys for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing **Defendant's Motion for Summary Judgment and Memorandum in Support** was placed in a postage prepaid envelope and deposited in the United States Mail at Portland, Oregon on September 30, 2014, addressed to:

Diane Roark
2000 N. Scenic View Dr.
Stayton, OR 97383


And was sent via email to the following email address:

gardenofeden@wvi.com


                */s/ James E. Cox, Jr.*
                JAMES E. COX, JR.