**S. AMANDA MARSHALL, OSB # 95347**
United States Attorney
District of Oregon
**JAMES E. COX, JR., OSB # 08565**
jim.cox@usdoj.gov
Assistant United States Attorney
United States Attorney's Office
District of Oregon
1000 SW Third Ave., Suite 600
Portland, Oregon 97204-2902
Telephone:     (503) 727-1026
         Facsimile:     (503) 727-1117
         Attorneys for Defendant United States

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **DIANE ROARK,** | Case No.: 6:12-CV-01354-MC |
| Plaintiff, | **REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| **UNITED STATES OF AMERICA,** | |
| Defendant. | |

Defendant the United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, and through James E. Cox, Jr., Assistant United States Attorney for the District of Oregon, submits this reply brief in support of Defendant's motion for summary judgment.

**Page 1**     Reply Brief in Support of Defendant's Motion for Summary Judgment
         *Roark v. United States,* 6:12-CV-01354-MC

## I.    INTRODUCTION

In her opposition to Defendant's motion for summary judgment, Plaintiff Diane Roark ("Plaintiff") acknowledges that the government is entitled to retain possession of some of the classified documents that were seized during the search of her residence. Nevertheless, she argues that the government's determination that other documents are classified is incorrect and that such documents – as well as unclassified documents protected by statute and/or governed by the terms of her non-disclosure agreement ("NDA") with her former employer the House Permanent Select Committee on Intelligence ("HPSCI") – must be returned to her. Plaintiff's arguments regarding documents in each of these categories are incorrect, and the government's continuing interest in the classified and/or protected information in these documents precludes return of the property to Plaintiff.

First, Plaintiff has failed to raise a dispute of material fact regarding the government's determination that certain documents contain classified information. Plaintiff argues that the government's classification determination is inconsistent because other documents about the same National Security Agency ("NSA") programs have been deemed unclassified. Plaintiff appears to assume that all documents referencing the same national security programs must all have the same classification level. But that is not the case. As one might expect, the classification level of a document depends on the specific information and the level of detail in that document. Furthermore, the government's classification determination is not subject to review. In this case, the government has provided detailed evidence that describes the documents in question and provides the basis for the classification level of those documents. Thus, the government has met its burden to show that these documents are classified documents in which the government has a continuing interest.

**Page 2**    Reply Brief in Support of Defendant's Motion for Summary Judgment
*Roark v. United States,* 6:12-CV-01354-MC

Plaintiff's argument in opposition to the government's retention of documents and notebooks containing information protected by the National Security Agency Act of 1959 ("NSAA") is that the NSA has a record of overreach in applying this designation to information. The government disputes Plaintiff's opinion, but that disagreement is immaterial because all of the unclassified documents at issue here include information which the NSAA itself specifically designates as protected information – the name(s) of NSA employees in non-public positions. *See* 50 U.S.C. § 3605.

Plaintiff's assertion that HPSCI has no basis to claim an interest in the property at issue also fails. Plaintiff does not – and cannot – dispute that her NDA with HPSCI covers classified and unclassified national security information as well as information received in executive session. The fact that Plaintiff executed a narrower NDA with the executive branch regarding Secure Compartmented Information ("SCI") does not relieve her of the obligations in the NDA she signed with her employer.

Plaintiff also devotes substantial argument to issues that are not material to this case. These immaterial issues include Plaintiff's view of the lawfulness and efficiency of NSA programs and the lawfulness of the criminal investigation which led to the seizure of her property. Plaintiff initially attempted to plead claims regarding these issues in her Complaint, but these claims were dismissed at the outset of the case. (Docket ("Dkt") # 35.) These issues have no bearing on the issue in this case – which is the government's continuing interest in protecting sensitive national security information.

Finally, Plaintiff requests that the Court "[r]eaffirm in part the Maryland District Court decision in the related Rule 41 (g) case of *JK. Wiebe et al. v. National Security Agency et al.* CA No. RDB-11-3245, 2012 WL 1670046 (D.Md. Sept. 14, 2012), by confirming that the National

**Page 3**     **Reply Brief in Support of Defendant's Motion for Summary Judgment**
          *Roark v. United States,* 6:12-CV-01354-MC

Security Agency (NSA) may not refuse to return all of a person's personal property or computer and its contents on the grounds that one allegedly classified or unclassified but 'protected' document has been found among those possessions." The government fully agrees that the Maryland court's ruling in the parallel Rule 41(g) case was sound and that it should be adopted by this court as well. The government only seeks to retain classified or protected government information- not Plaintiff's unclassified personal property on the computer. The only reason the government has not yet returned non-government information on Plaintiff's computer is because the parties were not able to reach an agreement on return procedures, and the government did not want to unilaterally review and return material prior to a ruling from the Court.

In sum, the government has met its obligations to show that it has a continuing interest in the property it has not returned to Plaintiff, and the Court should grant the government's motion for summary judgment.

## II. ARGUMENT

### A. The Scope of Plaintiff's Claim.

#### 1. Plaintiff no longer seeks the return of six items in the government's possession (and a portion of a seventh).

Plaintiff no longer seeks the return of six documents (HC2, HC4, part of HC5, HC6, HC9, and HC21) and one CD (HC7) retained by the government from the 2007 search. (Dkt # 87 at p. 9.) She acknowledges that this property is executive branch material marked as classified or protected information that she "unintentionally packed" in her files.[1] (*Id.*) Thus, the remaining items subject to Plaintiff's return of property claim are:

---

[1] While Plaintiff claims her possession of these documents was inadvertent, it was still a violation of government policy and of Plaintiff's HPSCI NDA. *See* Executive Order (E.O.) 13526, Part 4 (providing that "[c]lassified information may not be removed from official premises without proper authorization"); Dkt # 81, Ex. 1 at p. 10 ("Removal of any classified

**Page 4    Reply Brief in Support of Defendant's Motion for Summary Judgment**
         *Roark v. United States,* 6:12-CV-01354-MC

- the computer hard drive;

- 10 documents (identified as HC1, HC3, part of HC5, HC11-14, HC16, HC19, HC20); [2]

- and 13 appointment notebooks/day planners (identified as HC23-29; HC31-36).

(Dkt # 84, Ex. 3.)

> 2.  **The government does not possess any additional property from the 2007 search and seizure.**

Although Plaintiff has withdrawn her claim for return of a few items in the government's possession, she claims that "some paper documents [] are known to be missing" and she "requests that the Court direct the Federal Bureau of Investigation . . . to ascertain what happened to these emails and to determine whether any other paper documents are missing." (Dkt No. 87 at pp. 8-9.)  There is no basis for Plaintiff's request and it should be denied.

First, Plaintiff's allegation of missing documents is unsupported by any admissible evidence, such as a declaration or affidavit.

More importantly, Plaintiff fails to allege facts which would call into question the property inventory provided by the government.  The only specific documents that Plaintiff alleges have not been accounted for are "a stack of emails with headers and footers removed." (Dkt # 87 at 9.)  Plaintiff does not describe the stack of emails any further so it is possible that the documents are among the emails and faxes that the government has not returned (HC1, HC5,

---

document from the Committee's offices is strictly prohibited, except as provided by these rules."); *id.* at Ex. 4 at p. 3 ("I hereby agree to surrender to the HPSCI . . . upon my separation from the HPSCI staff, all information, material, or restricted data, which I hereby agree not to divulge, publish, or reveal by writing, word, conduct, or otherwise . . . .").

[2] Like the documents to which Plaintiff has withdrawn her return of property claim, HC3 is also an "executive branch paper document" (a memorandum to the Commander, Naval Security Group) so it may have inadvertently have been left off Plaintiff's list of documents for which she withdrew her claim.

**Page 5**     **Reply Brief in Support of Defendant's Motion for Summary Judgment**
              *Roark v. United States,* 6:12-CV-01354-MC

HC16, HC19, HC20).³ It is also possible that the electronic versions of these emails are among the emails on her computer (that the government has agreed to review for return).

In any event, the government has already provided evidence from the FBI regarding the property that is still in the government's possession. Laura Pino, the FBI agent serving as the custodian of Plaintiff's property, has declared that the only property still in the FBI's possession is the desktop computer and the documents listed in Exhibit 3 to her declaration. (Dkt # 84, ¶ 4.) The government is not aware of any property that was misplaced or lost since the time of the search and seizure.

Finally, although the government denies that is has misplaced any of Plaintiff's property, it is also not aware of any way to now verify whether any property was lost. The receipts from the seizure and from the returns of property do not have a page by page inventory of every document, so it is not possible to compare the receipts to identify whether there are pages that are not accounted for in the previous returns of property to Plaintiff.

> 3. **There is no basis to grant Plaintiff's request for other forms of relief completely unrelated to her return of property claim.**

In addition to requesting the return of the remaining property from the 2007 seizure, Plaintiff's motion for summary judgment includes requests for several other forms of relief, including requests that the Court:

- "[o]verturn NSA's interpretation of the National Security Agency Act of 1959 (NSA Act) by forbidding invocation of this act . . . to block appeal at the Interagency Security Classification Appeals Panel or other appropriate venue, of NSA's use of the FOR OFFICIAL USE ONLY designation to withhold unclassified information from the writer or the public"

- "[r]ule that withholding unclassified 'protected' material from citizens by any government body may be appealed to the Interagency Security Classification

---

³ HC16, 19 and 20 include emails that have been cut from full-sized pages. Email excerpts in HC17-18 and HC38 have been returned to Plaintiff.

**Page 6     Reply Brief in Support of Defendant's Motion for Summary Judgment**
           *Roark v. United States,* 6:12-CV-01354-MC

> Appeals Panel, just as withholding of classified material may be appealed, notwithstanding whether NSA Act or pre-publication agreements are invoked to block an appeal"
>
> - permit discovery to allow "factual revelations opening [] search policies to public debate"

(Dkt # 87 at pp. 2-3.) There is no basis for granting these additional requests for relief. Plaintiff's only remaining claim in this action is for return of property under Federal Rule of Criminal Procedure 41(g). (Dkt # 35). These additional forms of relief are not for the return of the property at issue, nor are they necessary steps to returning any property to Plaintiff – a point Plaintiff seems to acknowledge. (Dkt #87 at p. 3, "Plaintiff does not seek damages but rather, *in addition to her property*, factual revelations opening these search policies to public debate . . . .") (emphasis added).

### B. Plaintiff Is Not Entitled to Return of the Remaining Paper Documents.

#### 1. The government has met its burden to demonstrate that the classified Draft Op-Ed (HC11-13) should not be returned.

Although Plaintiff does not challenge the government's retention of two classified paper documents (HC2 and HC4) that were in her files, she does contest the government's retention of three copies of a draft Op-Ed that the government has demonstrated is classified at the SECRET/SI level. (Dkt # 80 at ¶¶ 12-13; Dkt # 87 at pp. 16-22.) None of Plaintiff's arguments create a genuine dispute of material fact regarding the government's right to retain this document.

As an initial matter, Plaintiff's allegation that the government elevated the classification level of the document from SECRET in 2006 to TOP SECRET now is incorrect. (Dkt # 87 at p. 17.) In fact, when Plaintiff submitted the Op-Ed for prepublication review in 2006, NSA determined that the submission was classified at the TOP SECRET level. (Exhibit 1 attached

hereto.) Due to the passage of time, the document is currently classified at the SECRET/SI level. (Dkt # 80 at ¶¶ 12-13.)

Next, Plaintiff alleges inconsistencies between the classification of this document and other documents regarding NSA activities, such as the May 2006 *Baltimore Sun* article and an e-book published by Edward Loomis earlier this year entitled *NSA's Transformation: An Executive Branch Black Eye*. (Dkt # 87 at pp. 19-20.) But Plaintiff is wrong to assume that all sources of information about the same programs or activities must have the same classification level. The classification of each document depends on the specific information in that document. Plaintiff herself acknowledges that it is possible for the addition of even a small detail, such as a system name, to make an otherwise unclassified document classified. (Dkt # 87 at pp. 11-12.) Thus, there is nothing inconsistent about documents that contain different information about the same program or topics having different classification levels.

Plaintiff's remaining arguments contesting the classification of the document involve second-guessing and questioning the motives underlying the government's classification determination. (Dkt # 87 at pp. 21-22.) The attack on the government's motivation is unfounded, as demonstrated by the government's approval of publication of other documents regarding these NSA programs that did not contain classified or protected information. In fact, NSA approved under the prepublication review process two submissions by Maryland plaintiff Mr. Loomis – the aforementioned e-book and an article entitled *The Thomas Drake Case- An Untold Story*. Information about THIN THREAD was also released in the redacted version of the Office of the Inspector General of the Department of Defense Report *Requirements for the TRAILBLAZER and THINTHREAD Systems* (Dec. 15, 2004) released in 2011 by the Department of Defense, in coordination with NSA, in response to a FOIA request.

Furthermore, Plaintiff cannot substitute her own judgment about the classification of documents for that of the executive branch official who has been designated and trained as an original classification authority ("OCA"), in accordance with E.O. 13526. Nor, for that matter, can she overcome the government's classification designation by submitting documents to her Maryland colleagues – all former government employees who no longer have access to classified information – for "classification reviews." (Dkt # 87 at p. 14.) The executive branch is vested with the sole authority to classify documents. *See United States v. Marchetti*, 469 F.2d 1309, 1317 (4th Cir. 1972) ("[T]he process of classification is part of the executive function beyond the scope of judicial review."); *United States v. Collins*, 720 F.2d 1195, 1198 n.2 (11th Cir. 1983) ("It is an Executive function to classify information, not a judicial one.").

Of course, the government must still meet its burden to establish that a document is classified. But in this case it has done exactly that. Miriam P. – an OCA with the NSA – has reviewed the three copies of the draft op-ed and verified that the documents contain information classified at the SECRET level that contain Communications Intelligence (COMINT) information, which is technical and intelligence information derived from foreign communications signals and data.[4] (Dkt # 80, ¶¶ 12-13.)

### 2. The documents containing NSAA Information are Protected From Disclosure.

Contrary to Plaintiff's allegations, the NSA does not contend that the National Security Agency Act of 1959 "empower[s] NSA to withhold any and all unclassified documents" or "that the NSA Act gave the Agency unique freedom to designate as FOUO [For Official Use Only]

---

[4] Notably, the evidence provided by the government in this case describing the content of the withheld documents and the basis for not returning them is even more detailed than that provided in the parallel Maryland return of property litigation in which the court granted the government's motion for summary judgment regarding possession of the classified and NSAA information. (Exhibit 2 (Declaration of Steven T. from Maryland litigation) at ¶¶ 8-12.)

**Page 9     Reply Brief in Support of Defendant's Motion for Summary Judgment**
           *Roark v. United States,* 6:12-CV-01354-MC

anything it d[oes] not wish to release." (Dkt. # 87 at pp. 11. 15.) The NSA has, in fact, returned a number of documents that – although generally referencing NSA activities – did not include information protected by the NSAA. (See, e.g., HC8, HC15, HC17, HC18.)

Nonetheless, Plaintiff has not and cannot dispute that section 6 of the NSAA constitutes a statutory privilege which allows the NSA to protect sensitive unclassified information "with respect to the activities" or "of the persons employed" by the NSA. (Dkt. # 79 at p. 6.); *see also Lahr v. Nat'l Transpo. Safety Bd.,* 569 F.3d 964, 984-85 (9th Cir. 2009) (holding that NSAA information is information "specifically exempted from disclosure by statute" under FOIA Exemption 3). This privilege was most recently recognized in the parallel Maryland return of property case when the court held that "the Government has established a continuing interest in the NSAA information, and the Court cannot require the Government to disclose the NSAA information sought by the Petitioners." *See Wiebe v. National Sec. Agency*, Civil Action No. RDB–11–3245, 2012 WL 1670046, *6 (D. Md. May 11, 2012).

Moreover, the government has met its burden to show that the NSAA applies to the 19 documents and notebooks retained by the government. The Declaration of Miriam P. establishes that these documents "each reference the name(s) of NSA employees in non-public positions with the Agency." (Dkt # 80 at ¶¶ 15, 16.) Employee names is a category of information explicitly mentioned in 50 U.S.C. § 3605, so this is not a situation where the NSA is expanding application of the statute beyond its intended purpose, as Plaintiff seems to argue. Further, the one case cited by Plaintiff on this point, *Founding Church of Scientology of Wash. D.C., Inc. v. Nat'l Sec. Agency*, 610 F.2d 824, 831 (D.C. Cir. 1979), is distinguishable for that reason.

Plaintiff's argument that the names of NSA employees do not constitute protected NSAA information also fails even if some of the employees named in Plaintiff's appointment logs are

**Page 10    Reply Brief in Support of Defendant's Motion for Summary Judgment**
*Roark v. United States,* 6:12-CV-01354-MC

no longer employed by the agency. The names of former NSA employees are protected under the NSAA. *See Minier v. C.I.A.*, 88 F.3d 796, 800 (9th Cir. 1996) (upholding CIA's refusal to reveal whether it had formerly employed an individual who was no longer alive at the time of the request). And the fact that the identity of some former NSA employees is public knowledge hardly shows that the NSA has broadly waived any claim to protect information regarding the identities of former employees. Under NSA policy, the names of retirees are not automatically released under a FOIA or declassification review request. While the NSAA does not limit the length of time such protection applies to the names of current and former NSA employees whose names have not been officially acknowledged by the government in association with NSA, NSA has made the discretionary decision to release such names in documents that are at least 45 years old.

Finally, Plaintiff requests that the Court order the documents be returned with the NSAA information redacted. (Dkt # 87 at p. 31.) But Plaintiff provides no evidence to support her mere assertion that "NSA practices from her retirement and thereafter permit Plaintiff to retain FOUO at home, including that covered by the NSA Act." (Dkt # 87 at p. 31.) In fact that is not the case, and it is not reasonable to require NSA to redact NSAA information when Plaintiff had no right to possess documents with such protected information.

Plaintiff also does not provide any reason why the fact that she authored the documents makes a legal difference -- and that fact did not alter the analysis of the Maryland court. It is worth noting that the majority of the documents are appointment logs from Plaintiff's time as a government employee, not from her post-government career. There is nothing inequitable about prohibiting employees in sensitive positions from taking such information with them after they leave government employment – even if the documents were authored by the employee.

### 3.     Plaintiff's HPSCI NDA entitles HPSCI to retain protected information.

In moving for summary judgment, the government also provided evidence that 15 of the paper documents in the government's possession contained information governed by Plaintiff's NDA with her employer, HPSCI.  (Dkt # 81.)  Plaintiff's HPSCI NDA governed testimony given before the HPSCI in executive session as well as information protected by statute (such as classified information and NSAA information).  (Dkt # 81, Ex, 4.)

Plaintiff does not dispute the authenticity of her HPSCI NDA, but she claims that there is a more recent "pre-publication agreement" that "did not restrict publication of unclassified information."   (Dkt. # 87 at p. 33.)  Plaintiff may be referring to the Secure Compartmented Information ("SCI") NDA that she signed on July 24, 2001.  (Dkt # 79, Ex. 1.)  The SCI NDA is indeed narrower than the HPSCI NDA in that it only governs SCI.  But Plaintiff's SCI NDA does not supersede her HPSCI NDA.  The SCI NDA is an agreement Plaintiff signed with the executive branch of the government as a condition of obtaining access to SCI.  (*Id.*)  Plaintiff's HPSCI NDA, on the other hand, is an agreement with her employer – HPSCI – in which she accepted obligations "as conditions precedent" for her "continuing employment or engagement with the HPSCI."  (Dkt # 81, Ex. 4 at p. 1.)

These conditions precedent include an agreement to be bound by the rules of the House and the HPSCI Rules of Procedure, to "never divulge, publish, or reveal by writing, word, conduct, or otherwise, either during [her] tenure with the HPSCI or anytime thereafter" classified information or information protected from disclosure by statute, and to "surrender to the HPSCI . . . upon [her] separation from the HPSCI staff" all "information, material, or restricted data" in the foregoing categories.  (*Id.* at ¶¶ 2, 7, 13.)

Plaintiff further argues that the applicable HPSCI Rules of Procedure that should apply here are the rules from the 107th Congress, not the 106th Congress. (Dkt. # 87 at p. 33.) But the relevant sections of the HPSCI rules from the 107th Congress are identical to those of the `106th Congress. (*See* Exhibit 3, attached hereto.) And Plaintiff seems to concede the broad scope of those rules.

Lastly, Plaintiff challenges HPSCI's determination that certain documents contain information received in executive session (i.e., closed session). Plaintiff argues that Darren Dick, the declarant from HPSCI, does not provide a sufficient foundation for his assertion that the documents include executive session information. (Dkt. # 87 at p. 37.) But the foundation for Mr. Dick's assertion is not only that he is "familiar with the subject matter and testimony that HPSCI routinely receives in executive session." (Dkt # 81 at ¶ 3.) He also asserted that the documents included "HPSCI budget information the classified annex to an intelligence authorization act that the HPSCI adopted in executive session." (*Id.* at ¶ 8.)

Plaintiff also argues that it is "unworkable" and not "feasible" to treat HPSCI budget information as executive session material because HPSCI staffers have to be well-informed on the topic beforehand and prepare committee members for sessions and witnesses. (Dkt # 87, Att. 7.) This argument misses the point. HPSCI rules allow current employees to discuss and disclose executive session material to perform their jobs. (Dkt # 81, Ex. 1 at pp. 8-9.) The documents at issue here that involve HPSCI budget information are correspondence by Plaintiff after she left HPSCI employment, so it does not fall with within any of these exceptions to non-disclosure. (Dkt # 81 at ¶ 8.)

**C.      The Government Is Entitled to Retain the Computer Hard Drive, But Is Prepared to Return Unclassified, Unprotected Information on It.**

**1.      Plaintiff has failed to raise a dispute of material fact regarding the presence of classified information on the computer.**

In moving for summary judgment, the government also presented evidence that four files on Plaintiff's computer contained information classified at the TOP SECRET/SI level. (Dkt # 80, ¶¶ 17, 18.) The files included information that involves intelligence activities (including covert action), intelligence sources and methods, or cryptology. (*Id.*)

In response, Plaintiff contends that the government has been inconsistent in classification of these files – documents regarding the NSA's THINTHREAD data collection program. As noted earlier, though, Plaintiff is wrong to assume that all sources of information about an NSA program or activity must have the same classification level.

Plaintiff and the four plaintiffs in the Maryland case sent many emails to one another about different issues related to NSA. This includes dozens, if not hundreds, of email exchanges about THINTHREAD in general and specifically about the THINTHREAD paper that the parties were drafting. Some versions of the paper and related email exchanges contain classified information while others do not, depending on which details were included in each specific version of the paper/e-mail exchange. Not all details about THINTHREAD are classified.

As noted by Plaintiff, NSA approved the release of unclassified and unprotected information about the THINTHREAD program in the manuscript subsequently published by Mr. Loomis as an e-book. Conversely, the logs of files/documents/objects provided to Thomas Drake lists approximately 100 copies of the THINTHREAD paper and/or related documents

withheld by the Government on the basis of containing information that was classified and/or exempt from release by statute.[5]

Thus, Plaintiff has failed to create a dispute of material fact regarding the classification of the electronic files from the computer. Plaintiff acknowledged in her SCI NDA (and appears to acknowledge in her brief) that such information is the property of the government and that she does not "possess any right, interest, title, or claim whatsoever to such information." (Dkt. # 79, Ex. 1 at ¶ 8.)

### 2. The government is willing to return unclassified, unprotected information on the computer.

Plaintiff also challenges the government's assertion that it has returned all property that does not contain classified or protected information. (Dkt. # 87 at p. 8.) Plaintiff argues this assertion is misleading because "the government has returned none of the requested electronic documents from her personal account on her computer hard drive." (*Id.*) The government never suggested that every file on Plaintiff's computer contained classified or protected information, nor has it suggested that it was not willing or lacked the resources to return files that do not contain government information to Plaintiff.

The government is willing and able to return such files to Plaintiff. The reason it has not done so to date is because the parties have not reached an agreement to conduct that review. In fact, when the government began to conduct such a review (based on the parties' agreement to have the electronic files reviewed and returned before briefing the court on the legal issues, see

---

[5] Plaintiff is also incorrect in claiming that the government labelled all THINTHREAD documents as unclassified in the government logs of documents withheld from return to the Maryland plaintiffs. (Dkt # 87 at p. 17.) Many of these documents were deemed classified, but the government's log of withheld documents did not distinguish between classified information and unclassified NSAA information. Rather, both the classified and unclassified retained documents were labeled as "NSA protected information" in the logs.

**Page 15    Reply Brief in Support of Defendant's Motion for Summary Judgment**
   *Roark v. United States,* 6:12-CV-01354-MC

Dkt # 57), Plaintiff objected to the review because it included a review for information protected under HPSCI's NDA with Plaintiff (and not solely for information belonging to executive branch agencies).  (Dkt # 87 at p. 35.)  Thus, it is not a lack of willingness or resources that has prevented this review from occurring to date.[6]

### III.    CONCLUSION

For the foregoing reasons, Plaintiff is not entitled to return of the property retained by the government.  Thus, Defendant respectfully requests that the Court grant Defendant's motion for summary judgment, deny Plaintiff's motion for return of property, and dismiss this action with prejudice.

DATED this 31st day of December 2014.

        Respectfully submitted,

        S. AMANDA MARSHALL
        United States Attorney
        District of Oregon

        */s/ James E. Cox, Jr.*
        JAMES E. COX, JR.
        Assistant United States Attorney
        Attorneys for Defendant

---

[6] Additionally, there is no basis for a court order requiring the government to use Martin Peck's technology for any review of Plaintiff's computer.  (Dkt # 87, at pp. 10-11, Dkt # 89.)  The NSA is fully capable of conducting such a review.  Furthermore, Plaintiff appears to be proposing a process wherein Mr. Peck's search technology determines whether a file is classified (rather than the government's method in which an executive branch OCA reviews the content of files which may be classified based on the presence of key term(s) in the files).  Thus, Plaintiff's proposed process is also unacceptable because only the executive branch can make classification determinations.  *See supra* part II.B.1.

**Page 16**    **Reply Brief in Support of Defendant's Motion for Summary Judgment**
        *Roark v. United States,* 6:12-CV-01354-MC

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **Reply Brief in Support of Defendant's Motion for Summary Judgment** was placed in a postage prepaid envelope and deposited in the United States Mail at Portland, Oregon on December 31, 2014, addressed to:

Diane Roark
2000 N. Scenic View Dr.
Stayton, OR 97383

And was sent via email to the following email address:

gardenofeden@wvi.com

                                                    */s/ James E. Cox, Jr.*
                                                    JAMES E. COX, JR.