Diane Roark
2000 N. Scenic View Dr.
Stayton OR 97383
gardenofeden@wvi.com
Telephone: (503) 767-2490

FILED 02 FEB '15 11:52 USDC-ORE

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

**DIANE ROARK**                              Case No.: 6:12-CV-01354-MC

Plaintiff,

v.                                          **PLAINTIFF REPLY TO
                                            DEFENDANT'S RESPONSE TO
                                            CROSS-MOTION FOR SUMMARY
                                            JUDGMENT**

**UNITED STATES OF AMERICA**

Defendant.

Plaintiff Diane Roark, *pro se*, submits the following response to Defendant's
arguments against her cross-motion for partial summary judgment.

## INTRODUCTION

The government argues that, although there was no criminal evidence against
Plaintiff after search of her seized materials and an investigation of more than 5 years, it
had a legal right to conduct two separate and distinctive additional searches of Plaintiff's
seized written material and has a "continuing interest" in certain paper and electronic
documents seized in 2007 that may not be reviewed by the Court.

Plaintiff argues that under the Fourth Amendment requirement for particularity,

the Government had no right to conduct additional searches using key words other than those employed for the prior investigation without asking the court for two additional search warrants, which it failed to do.  The Government also formerly denied that it had seized and retained distinctive paper documents mentioned in the warrant that were prima facie evidence of a prior unnotified, illegal search, but subsequently sent three of those documents to Plaintiff and now admits retaining an unknown number of additional such records.

There is evidence that during this case the Government may have conducted additional electronic searches of Plaintiff and an expert witness.  Plaintiff observes that many illegal searches appear to have been conducted against her since 2006, and prays that the Court order discovery to ascertain the facts.  This may justify the complete return of Plaintiff's property, as well as expose Government tactics and possibly secret interpretations of law affecting the body politic.

With two key word searches of more than 10,000 emails still to be reviewed, the partial search of Plaintiff's paper and electronic Word documents yielded seven unclassified documents marked "For Official Use Only" (FOUO), a "protected" designation.   Plaintiff offered voluntarily to return these, despite her contention that she was allowed to keep them so long as she protected them as she had for five years at that point. Among unmarked electronic documents written by or sent to Plaintiff, NSA alleges to date that two (and copies thereof) are classified at the Secret/SI or TS/SCI level and may not be returned, their presence also justifying destruction of the computer hard drive.

Page 2      **Plaintiff's Reply to Defendant's Response to Cross-Motion for Summary Judgment,**
               *Roark v. U.S., 6:12-CV-01354-MC.*

Plaintiff points out that the allegedly TS/SCI document already was twice released by NSA as unclassified, but Defendant has not so acknowledged. Plaintiff argues that the allegedly Secret/SI document is in reality unclassified or at most contains only only a few clauses or sentences that the Government might possibly construe as classified, and that if so determined these could be redacted.

Defendant argues that the Government's burden of proof requires merely transmitting the decision of an Original Classification Authority to the Court. Plaintiff responds that "circumstances," as identified in precedent, call for judicial review in this case, and that in general judicial review is both permissible and essential in order to maintain constitutional checks and balances as well as a free society.

NSA says all unmarked FOUO documents to date are so designated solely because they contain at least one [presumably full first and last] name of a current or former NSA employee. However, NSA does not commit to this practice for remaining unreviewed material, that was sequestered after NSA searched twice with key words other than employee names. NSA continues to claim the right to withhold the entire document or compilation in which such a name or other information alleged to be sensitive appears.

Plaintiff establishes that for many decades NSA claimed vast statutory powers under the NSA Act of 1959 to confiscate unclassified information from its owners or withhold it from the public, but the legislative history proves this interpretation was never intended or permitted. Like other agencies, NSA properly should have been subject since 1966 to provisions of the Freedom of Information Act (FOIA), excepting its extra

statutory privilege to protect employee information deemed sensitive from public knowledge.

Plaintiff also provides evidence that in protecting employee information, NSA permits its safekeeping at the homes of employees or former employees. Plaintiff argues that the situation has been similar for other "For Official Use Only" information, the designation and handling of which has not been regulated, and that this was certainly the case in 2002 when she retired.

In every case in which it argues it has a right to seize information, NSA improperly claims the right to confiscate entire documents rather than redact sensitive names or other unclassified information. Plaintiff responds that NSA has provided no legal justification for this practice and that it is explicitly forbidden under FOIA.

Plaintiff asks the Court to issue an injunction forbidding improper NSA invocation of the NSA Act for any purpose not justified by the legislative history, including but not limited to powers over unclassified information other than personnel information and the ability to seize entire documents rather than redact sensitive information.

Plaintiff's former employer, the House Permanent Select Committee on Intelligence (HPSCI), claims the right to search Plaintiff's personal papers and confiscate entire documents mentioning any generic topic that might ever have been presented in a paper or discussed in closed executive session, notably anything at all relating to the intelligence budget. HPSCI alleges a right to review NSA's search results and also had NSA conduct a separate search on HPSCI's behalf. It justifies this search and

Page 4    **Plaintiff's Reply to Defendant's Response to Cross-Motion for Summary Judgment,**
           *Roark v. U.S., 6:12-CV-01354-MC.*

withholding of unclassified information on grounds that she signed two pre-publication agreements permitting the Committee to withhold unclassified information from publication.

Plaintiff not only rejects HPSCI's right to search her papers and computer without cause or warrant, but also rejects the legitimacy of the Committee's alleged right to seize her unclassified information, to seize privately held unclassified material not intended for publication, or to restrict the publication of non-FOUO unclassified information. Plaintiff insists that a later and governing nondisclosure agreement removed the provision regarding unclassified information and asked HPSCI, beginning in 2007, for a copy of it. The Committee has been unresponsive, and Plaintiff prays that the Court require HPSCI to produce it.

In light of apparent illegal searches and decades of misleading various courts about NSA's legal authorities so as to violate the First and Fourth Amendment rights of victims and the public, as well as an undeniable record of misinforming Congress and the public about NSA domestic intelligence activities since the 9/11 attacks, Plaintiff also argues that Defendant comes to this case with "unclean hands."

## ARGUMENT

### A.    The Scope of Plaintiff's Claim

#### 1. Plaintiff no longer seeks the return of six items and a portion of a seventh.

The Government incorrectly states that Plaintiff "acknowledges that this property is executive branch material." This is true only for a Confidential and a Secret document that were not included in this lawsuit and to which Plaintiff *never* claimed a right.

Plaintiff offers more detail on the issue. After 17 years at the Committee, Plaintiff removed about 30 boxes of unclassified from her office upon departure and has not reviewed them since. This large volume was due to the fact that she had no time to review and throw away most of the material before departing, an extremely time-consuming job; she contemplated going through all the papers and keeping selected items because she was considering writing a newspaper column on national security issues. This idea was abandoned after her experience in August 2006 with NSA's prepublication review process. She had no idea that a Confidential and a Secret document were packed among the unclassified items until the FBI found them, and she does not know whether she herself packed them, as other staff did some of the packing. The two documents are on separate and miscellaneous topics of no continuing interest to Plaintiff.

Plaintiff has vigorously contested, with documentation, HPSCI and NSA claims that there were established rules governing the generating/marking or handling of unclassified "sensitive" information or prohibiting its removal from the office. The Government has failed to document its assertions to the contrary.

Nonetheless, Plaintiff has no interest in the government FOUO documents. According to dates provided by HPSCI, these concentrated in the late 1997 to 1999 time frame, 3 years before her departure, and doubtless were mixed in among other unclassified papers. It is unfortunate that Plaintiff's willingness voluntarily to return them is misrepresented and falsely portrayed by the Government as an admission of illegality.

Plaintiff also clarifies that this includes all government documents marked FOUO, due to an apparent discrepancy in the count..

Page 6    **Plaintiff's Reply to Defendant's Response to Cross-Motion for Summary Judgment,**
*Roark v. U.S., 6:12-CV-01354-MC.*

**2. Government possession of additional seized property.**

The Government alleges that there is "no basis" for this claim that specific emails without headers or footers are missing and not accounted for. "Plaintiff fails to allege facts which would call into question the property inventory," that her belief is "unsupported by any admissable evidence, such as a declaration or affidavit," that they may be among documents the government has not returned, and that there might be copies on Plaintiff's computer.

There are no copies on Plaintiff's computer. These are copies that were printed, and then deleted from her computer to protect Committee investigative sources under constitutional separation of powers. Thus their distinctive removal of headers and footers that might identify sources.

They were in Plaintiff's office and were not discussed with or shown to anyone else for the above reasons. Plaintiff attested to their nature, exact location and her prompt discovery that they were missing very soon after the FBI entered the house. She so stated in sworn documents before the Court, so an affidavit from Plaintiff should be unnecessary.

Further, the FBI in July 2007 itself attested to the documents' existence in a sworn affidavit to secure a warrant to search Plaintiff's home. "Attachment E: Items to be Seized" included as part of item one "classified documents missing headers and footers." This language was replicated in the search warrant. The relevant portion of the affidavit was attached to Plaintiff's cross-motion. As Defendant points out, an affidavit is legally acceptable evidence. However, Defendant still refuses to acknowledge the existence and

proven content of its own pertinent affidavit.

NSA and FBI appear to have cooperated in attempts to muddy and confuse the issue, but given the clear language of the affidavit, it is hard to see how they envisioned being successful. It appears obvious that the motive is to withhold and cover up prima facie evidence of the truth of Plaintiff's allegation that there was a surreptitious search prior to the overt search, given that otherwise they could not have known about or described these highly distinctive documents.

NSA was party to these evasions because in the affidavit and warrant these are specifically listed as "classified" documents. The FBI is not an original or derivative classification authority (OCA) for NSA material and has little or no expertise in most of NSA's operations or in its classification standards. It is obvious that photos or copies of the documents that were "in plain view" on a shelf (albeit in a stack with only the top document showing) were taken during an unnotified and thus illegal "sneak and peak" search and provided to NSA, which proclaimed them classified before the now unsealed affidavit and the warrant were written. This also raises the question whether there was an affidavit or warrant for the surreptitious search, which was illegal because it was never notified but perhaps also because there was no affidavit or warrant justifying it.

Prior to her cross-motion, Plaintiff had belatedly received only three of these documents, or portions thereof, on October 1 and October 6, 2014. These pieces or shreds of the documents are reproduced at **Attachment 1**, plainly demonstrating their distinctive appearance.

It should be stressed that *these three items alone are proof that documents*

*meeting Plaintiff's description were seized*, contrary to Defendant's denials during prior mediations, and therefore that federal agents almost certainly had previously searched Plaintiff's home. Pressed on this matter within the cross-motion, Defendants finally were forced to so acknowledge in this section of their response that they have an unknown number of additional such documents. They state "it is possible" that the documents are among the emails and faxes that the government has not returned "(HC1, HC5, HC16, HC19,HC20)." Footnote 3 acknowledges that the last two "include emails that have been cut from full-sized pages," while "email excerpts" in HC 17,18 and 38 were returned to Plaintiff – the first time Plaintiff received the numerical designations for 17 and 18.

So in the fine print the FBI finally admits to possession of still more email segments without headers or footers. But it doesn't admit how many. HC19 and HC20 "include" some. Plaintiff recalls a sizable stack of these documents, which took a significant amount of time for her to select, print out and process. There is no count of how many or the total number of these and other documents under those two numbers, nor is it revealed why numerous documents were bunched together under those two numbers.

Importantly, HC 16, 19 and 20 are not even included in the list of documents presented to the Court as still retained by Defendants,[1] and when Plaintiff previously asked about missing numbers she was not told about these numbers and their contents. The FBI used a similar tactic to hide the seizure of these emails without headers or footers within its list of items seized. (also at **Attachment 1**). Some lines list items in

---

1    Declaration of Miriam P., September 30, 2014, charts at pp. 5, 7 and 8.

Page 9    **Plaintiff's Reply to Defendant's Response to Cross-Motion for Summary Judgment,**
*Roark v. U.S., 6:12-CV-01354-MC.*

great detail, but others are in large amorphous groups.  Although the emails without headers and footers were separately listed in the sealed affidavit and in the warrant, item 1 lists one dated email, item 4 "emails, articles and calendars," and item 19 "emails, USIC related doc. notebook."   Such tactics can be used to hide inconvenient evidence of illegal search and seizure.

This is a good demonstration of why Plaintiff requests that the Court require descriptions of withheld documents that are sufficient to identify the contents and provide the opportunity for individual, reasoned opposition.  It is also an example of why there should be judicial review of withholdings.  These emails often revealed embarrassing information about NSA, a type of information that E.O. 13526 stipulates is not to be withheld from the public.   In further indication of the dysfunction and inconsistency of the NSA classification process, the affidavit and warrant both claimed they emails in question were classified, but NSA now admits that they are not.

**3. Basis for relief allegedly unrelated to property claims.**  The Government's allegations here that there is "no basis" for this relief are mere assertions that are not backed by factual or legal content or any other analysis.   Plaintiff, in contrast, has documented in excruciating detail the manner in which NSA misrepresented its powers under the NSA Act for decades and in various venues, including the Interagency Security Classification Appeals Panel.   The discussion and evidence in item 2 directly above provides evidence of illegal search and efforts to conceal it.  This and other apparent illegal searches, discussed elsewhere, justify Plaintiff's request for discovery.

B. **Justification for Return of Remaining Paper Documents**

**1a.    Government Burden of Proof re OpEd paper.** The Government claims it "has demonstrated" that the Op Ed is classified at the Secret/SI level, downgraded from the TS/SCI level "due to the passage of time."

This burden of proof allegedly is met simply by getting an Original Classification Authority (OCA) to stamp it so. The Court and Plaintiff allegedly must accept this unquestioningly because the Executive Branch has the 'sole authority to classify." It is alleged that Plaintiff has shown no "genuine dispute of material fact" about the Government's right to keep this document and represents Plaintiff's objections as ignoring the obvious reality that different publications about the same topic may have different classifications. Plaintiff is said to wrongly question the Government's motives.

In a separate section on the legal history of Judicial Review of classified information, Plaintiff rejects the implication that Courts must or should simply accept the opaque classification decision of an NSA OCA, especially in the instant 41g cases that have exhibited many classification and transparency problems.

Plaintiff suggests that Martin Peck's software would be useful in evaluating publicly available information about this paper to provide useful background for a substantive *in camera* discussion of points NSA deems classified within this paper. If the Maryland case is indicative, the number of papers deemed classified will be few, and this could be the only one.

In the Maryland case of *Wiebe et al. v. NSA et al.,* the Magistrate Judge acknowledged that even in the case precedent on which she relied (and which she interpreted as preventing judicial review), if the government alleged the information to be

classified, the Court could review "whether the information had previously entered the public domain."[2] That is precisely what this software is meant to do, efficiently and fairly comprehensively. The system does not make claims about classification or level of classification, nor is it intended to substitute for a classification authority. It is merely a robust way to compare a potentially protected document against the entirety of the public knowledge base, insofar as the latter has been compiled and processed in its database and made available for reference. It can benefit the courts as well as both parties to civil or criminal actions.

If specific text nonetheless is found to be classified, that part can be redacted. NSA has not and cannot demonstrate any authority to withhold entire papers when only a portion is classified. It also admits that prior redactions within the OpEd paper are now excessive, since the classification has been lowered.

Plaintiff discusses these issues in depth in her section on the Freedom of Information Act. With its interpretation of the NSA Act discredited, Defendant has no authority to withhold unclassified information except under the Freedom of Information Act, which has a strong presumption favoring release even when in doubt, plus a requirement for minimal redaction.

NSA has mischaracterized Plaintiff's arguments that the paper is not classified. She has alleged that the major chunks of the paper alleged to be classified are virtually identical to or less specific than those elsewhere that are officially deemed unclassified. It is also obvious from Plaintiff's summary that the overall themes of the paper were

---

2  (*U.S. v. Marchetti,* 466 F.2d 1309, 1317 (4th Cir. 1972, cited in Defendant's Motion for Summary Judgment, Exhibit 2, p. 4).

unclassified; but by the time the censors got done, the themes were scarcely distinguishable.

Plaintiff's only uncertainty about classification involves her inability to remember part of one paragraph, the only paragraph that by any stretch of the imagination could be related to "technical and intelligence information derived from foreign communications signals and data," thus meriting an SI designation. The theme of this paragraph is that the government wasted a lot of money and degraded capability through ill-advised and sometimes expensive actions that undermined performance and achievement of modernization goals [as verified by its current inability to find domestic terrorists despite massive infringement on Fourth Amendment liberties]. This is embarrassing but it is not classified, and it is forbidden to hide embarrassment or waste of money behind classification. This information is also something that the American taxpayer deserves to know.

Plaintiff has presented many problems and inconsistencies with OCA classifications during the criminal case involving Thomas Drake and in the investigation and 41g cases of Plaintiff and her four associates. Mr. William Leonard, former Director of the Information Security Oversight Office responsible for classification policy for the entire Intelligence Community, was so upset by egregious nature of these errors and the failure to hold anyone at NSA accountable that he persuaded the court to unseal one of the five documents involved and engaged in an open dialogue with a successor at ISOO about it. See **Attachment 2.** These are factual issues that NSA did not address or refute and relate directly to whether there should be judicial review.

**1b.  Government burden of proof re ThinThread paper.**  The Government failed to address specific factual allegations about this paper, e.g.:

- that its alleged classification varied according to the needs and whims of the Government (herein documented in affidavits at **Attachment 3**);

- that it was released as Unclassified to J. Kirk Wiebe in the companion Maryland Rule 41g) case (previously documented by affidavit), whereas here it is designated TS/SCI; and

- that it is unlawful to reclassify a paper that has been released without many high-level approvals.

Mr. Wiebe has also since informed me that the version released twice was the earlier one, with a subsystem name that Plaintiff had subsequently removed as possibly classified. Surely NSA maintains records in this regard and can confirm release of the paper. Alternatively, Plaintiff will provide the Court a copy of the released paper if requested. By failing to refute such facts, Defendant admits them.

**2.  The National Security Agency Act of 1959.**

The government fails to address or refute dispositive evidence that it has interpreted the NSA Act as providing far more power than specified in Legislative history.  It is inconceivable that this was accidental.  The General Counsel's Office surely maintained these seminal documents.  If the congressional history was lost, it could have been recovered at a law library.  One does not decide to assert truly sweeping powers, derived from only one partial sentence in the law, without such due diligence, or continue to do so for decades.

NSA used this interpretation to win numerous Court decisions, including the related Maryland case of *Wiebe et al. v. NSA et al.*, in which the Magistrate Judge relied on NSA's alleged "*statutory* privilege protecting against the disclosure of NSAA [i.e. the NSA Act of 1959 and unclassified] information relating to its activities" not just personnel information.  She concluded that "the Government has established as a *matter of law* that the information it deems to be classified *or NSAA* information...cannot be returned to Petitioners." (emphasis added).[3]  That is, NSA had as much power over release of unclassified information regarding any NSA "activities" as it had over classified information due to this interpretation.

Defendant's protest that it has released some documents are unavailing and obviously inadequate.  It is true that NSA still may redact personnel information according to evolving standards of security, if fairly applied.   It is not true that the NSA Act or any other law or regulation permit NSA to withhold entire documents or compilations rather than simply redacting, in current practice, last names except the first initial.  This has been an egregious violation of standards, particularly since FOIA was first passed in 1966 and required only minimal redactions, specifically barring this NSA practice.  It appears that NSA claimed a unique statutory exception although FOIA was enacted later than NSAA and normally might have superceded it.

If the Court does not accept Plaintiff's argument that FOUO may be kept in a residence under Intelligence Community and NSA practices, the law – not a regulation but a law – requires that all items withheld because only part of them contain classified

---

3 Id, Defendant's Motion for Summary Judgment, Exhibit 2, pp. 4, 9, emphasis added.

or restricted information must be minimally redacted and returned to Plaintiff. NSA's assertion that it can find one last name and withhold voluminous material on that basis is facially false and NSA has not even attempted to support it legally.  This applies not only to all of Plaintiff's agenda books and telephone logs, which she herself purchased for combined personal and business use, but also all of her other paper and electronic documents.

Defendant merely asserts that NSA does not permit sending or keeping Unclassified FOUO information at an employee or retiree's residence. It has not produced any current or past written NSA or Intelligence Community policy to this effect, and it has not produced any from 2002 when Plaintiff retired. NSA has not refuted information to the contrary presented by Plaintiff, regarding both NSA and the Intelligence Community at large. Presidential attempts finally to impose some order and regularity on the realm of unclassified but protected information are at **Attachment 4**.

Plaintiff demonstrated that FOUO and similar designations have been unregulated, inconsistent and lack formal standards for imposing the designation or handling the information. She specifically documented that this situation persisted for years after her retirement in 2002. Nor has either NSA or HPSCI addressed Plaintiff's assertion that she can be held only to the standards and the pre-publication agreement in existence when she retired.

NSA claims that its active and retired employee policies are identical regarding maintenance of FOUO at home. This makes it even more important for it to address the policies of the Phoenix Society, with which it cooperates, that exists precisely to maintain

and distribute current lists of retirees' names and locations, arrange social outings and exchange personal updates. Nor has NSA provided formal policy as of 2002 or any other time about distribution of the NSA Newsletter. Facts are more convincing than blanket assertions and documented contrary facts cannot be simply ignored.

Plaintiff continues to insist that her last pre-publication agreement did not cover unclassified information, and HPSCI continues to attempt artfully to misconstrue these plain statements, having since 2007 refused to provide a copy of the agreement. It is possible that HPSCI lost the last agreement that Plaintiff signed. It is not conceivable that it lost the agreements of the entire staff, all of whom were forced to sign it at the same time.

C.    **Computer Information and Hard Drive.**

**1. Material fact regarding classified information on the hard drive.**

The Government has not addressed material facts presented by the Plaintiff, simply claiming that none were presented, and merely repeats its assertions that the Court must accept the judgment of any OCA despite the poor record of classification probity and consistency in this and related cases. It is a material fact that the ThinThread paper previously was formally released as unclassified, for instance; therefore, no Top Secret/SCI material has been found on the hard drive, thus allegedly requiring its destruction.

2    **Government willingness to return unclassified, unprotected information on the computer.** Plaintiff appreciates the willingness to do so, so long as "unprotected information" is interpreted to include personnel names only and so long as the

Government convincingly refutes evidence that FOUO information could be taken or sent home and retained or destroyed there, providing it was protected from public disclosure. This is the original meaning of "protected" material, and it did not include classified.

Past statements tended to mislead the reader into believing that most of Plaintiff's total material had been returned, rather than most of the tiny portion reviewed to date; the grouping of unknown numbers of documents under a single identifying number is misleading even now, and some numbers containing multiple documents are not even listed . Plaintiff deserves a listing and description of every single document still in government possession. In the Maryland case, emails appear to have constituted the great bulk of unclassified material withheld, and there are over 10,000 emails on Plaintiff's computer.   Thus judicial decisions could deprive Plaintiff of vastly more records than would appear from current totals that have been minimized through grouping under one number.

## CONCLUSION

For the foregoing reasons, Plaintiff is entitled to return of her property in its entirety and to discovery regarding apparently illegal Defendant searches conducted against her by the Government beginning in 2006 and repeating or persisting until at least December 2014. She seeks relief in the manner outlined in the Introduction to her November 26, 2014 submission and an injunction against any further attempt by NSA to exercise illegal authorities under the NSA Act of 1959. Plaintiff respectfully requests that the Court grant her cross-motion for partial summary judgment, with discovery regarding illegal searches, and deny Defendant's motion for summary judgment and dismissal with

Page 18      **Plaintiff's Reply to Defendant's Response to Cross-Motion for Summary Judgment,**
*Roark v. U.S., 6:12-CV-01354-MC.*

prejudice.

DATED this 30th day of January 2015.

Respectfully submitted,

*Diane Roark*

Diane Roark, *pro se*


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **Plaintiff's Reply to Defendant's Response**

**to Cross-Motion for Summary Judgment** was emailed to James E. Cox, Jr., on January

30, 2015 to the following email address:  jim.cox@usdoj.gov.

It was then sent by United States Mail from Stayton, Oregon to:

James E. Cox, Jr., Esq.
AUSA, United States Attorney's Office
1000 SW Third Ave., Suite 600
Portland, Oregon 97204-2902