IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DIANE ROARK,

        Plaintiff,

        v.

UNITED STATES OF AMERICA,

        Defendant.

Case No. 6:12-cv-01354-MC

OPINION AND ORDER

MCSHANE, Judge:

Plaintiff Diane Roark brings this motion under Fed. R. Crim. Proc. 41(g), seeking the return of certain property seized in 2007 by government agents. Defendant United States filed a motion for summary judgment, and Roark filed a cross-motion for summary judgment. For the reasons that follow, the government's motion for summary judgment, ECF No. 79, is GRANTED, and Roark's motion for summary judgment is DENIED.[1]

---

[1] After oral argument on summary judgment, Roark filed a Motion to Compel for four types of documents. *See* ECF No. 103. That motion is DENIED. The government has insisted that it is unaware of a recent, superseding NDA between Roark and HPSCI. I do not believe that granting a motion to compel, under threat of sanctions, will produce that document. Second, Roark asks for documents from the Information Security Oversight Office to clarify whether the National Security Agency Act of 1959 applies to certain personnel information. As explained in the body of this opinion, even if I were to agree with Roark's position, I am bound by Ninth Circuit precedent to the contrary. The production of these documents, even if they existed, would have no effect on my ruling. Third, Roark requests the production of certain seized but unidentified documents. The government insists that all seized documents are

1 – OPINION AND ORDER

## BACKGROUND

In an earlier order on this case,[2] Judge Aiken provided a detailed recitation of the underlying facts, which I incorporate here. The lengthy history of this case originates from the government's allegedly wrongful actions pursuant to its investigation into leaked confidential government information. Following the September 11, 2001, attacks on the United States, President Bush established the Terrorist Surveillance Program ("TSP"), which authorized the National Security Agency ("NSA") to intercept international communications of persons linked to Al Qaeda or related terrorist organizations. On December 15, 2005, the New York Times began publishing a series of articles describing a range of alleged NSA activities, including the TSP and warrantless wiretaps. The Baltimore Sun published an article on the same subject.

Shortly after publication of the first New York Times article, the Department of Justice ("DOJ") and the Federal Bureau of Investigation ("FBI") initiated an investigation to ascertain the source or sources that were responsible for the unauthorized disclosure of classified information contained within the article. Roark, a former staff member of the U.S. House of Representatives Permanent Select Committee on Intelligence ("HPSCI), was identified as a subject of that investigation.

---

accounted for and the subject of this motion for summary judgment. I do not believe that granting a motion to compel under threat of sanctions will produce additional documents. Finally, Roark requests NSA documentation confirming that the government already released as unclassified a document in the case of her associate J. Kirk Wiebe, which is identical to one of her documents at issue in this case. The government explained during oral argument that if such a document were released, it was released in error, and any such document is in the possession of Mr. Wiebe, not the government. A motion to compel such documents at this stage would not resolve any of the issues pending before this Court for summary judgment. Roark also moves to unseal documents. ECF No. 107. In an exceedingly broad request, Roark seeks to unseal "any type of search or other document pertaining to her that was sealed by a Title III court from 2000 through 2015." ECF No. 107, 1. Even assuming I had the jurisdiction to do what Roark requests, the motion goes well beyond what is at issue here, which is Roark's motion to return property under rule 41(g). The motion to unseal is DENIED.

[2] *See* ECF No. 35.

In February 2007, Roark voluntarily met with the DOJ and FBI for three hours regarding their investigation. Over the course of the interview, Roark answered all of the government's questions, except that she refused to reveal her sources of information on warrantless wiretaps, as well as the details of her discussion with a congressman. At that time, Roark also provided an affidavit, averring that she was not the source of the classified information in the articles at issue.

In July 2007, the government applied for and obtained warrants from the U.S. District Courts for the Districts of Maryland and Oregon to search plaintiff's personal residence for evidence related to the investigation. On July 26, 2007, FBI agents executed the search warrant and confiscated a number of items, including computers, hard drives, other electronic items, and various documents from Roark's home in Stayton, Oregon.

In December 2009, DOJ prosecutors alleged that Roark perjured herself during their February 2007 interview and offered her a plea bargain. Roark refused their offer. Thereafter, plaintiff was neither threatened with further charges nor did she receive notice that she was no longer a target of the investigation. Three individuals subsequently admitted to being the sources of the leaked information; none of them have been prosecuted.

In November 2011, plaintiff filed a lawsuit in the U.S. District Court for the District of Maryland under Fed. R. Crim. P. 41(g), seeking the return of property seized from her residence in July 2007. Plaintiff was ultimately dismissed from that action for improper venue. *See Wiebe v. Nat'l Sec. Agency*, 2012 WL 1670046, *1-2 (D. Md. May 11, 2012). Accordingly, on July 26, 2012, Roark filed a complaint in the U.S. District Court for the District of Oregon, alleging constitutional, equitable, and whistleblower retaliation claims, as well as a return of property claim pursuant to Fed. R. Crim. P. 41(g). After commencing her lawsuit in this District, Roark

received confirmation from the government that no criminal charges would be filed against her arising out of the investigation or the July 2007 search of her residence.

On November 13, 2012, the government moved to dismiss Roark's complaint, except for her return of property claim. On March 12, 2013, Judge Aiken granted Roark's request for voluntary withdrawal of all claims except for the Rule 41(g) motion. On July 8, 2013, the matter was reassigned to me.

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (quoting Fed. R. Civ. P. 56(e)).

## DISCUSSION

"A person aggrieved . . . by the deprivation of property may move for the property's return." Fed. R. Crim. P. 41(g). The burden of proof on a Rule 41(g) motion depends on when the plaintiff files the motion. "When a motion for return of property is made before an indictment is filed (but a criminal investigation is pending), the movant bears the burden of proving both

4 – OPINION AND ORDER

that the [property's] seizure was illegal and that he or she is entitled to lawful possession of the property." *United States v. Gladding*, No. 12-10544, 2014 WL 7399113, at *2 (9th Cir. Dec. 31, 2014) (citation omitted). After the government has abandoned its investigation, the movant "is presumed to have a right to [the property's] return, and the government has the burden of demonstrating that it has a legitimate reason to retain the property." *Id.* The government can rebut the presumption by proving a "legitimate reason" for retaining the property that is "reasonable under all of the circumstances." *Id.* However, "if the government's legitimate interests can be satisfied even if the property is returned, continued retention of the property would become unreasonable." *Ramsden v. United States*, 2 F.3d 322, 326 (9th Cir. 1993).

As an initial matter, it is important to note that despite the long and often contentious history between Roark and the government, the issue before this Court is restricted to the Rule 41(g) motion. Although Roark raised numerous constitutional claims in her initial complaint and again during oral argument, the inquiry before me is restricted to the issue of the return of property. A motion for a return of property is of limited scope and does not provide grounds for other forms of injunctive or declaratory relief. Roark has repeatedly mentioned that the alleged illegality of the search that led to the seizure of her property should play a factor in whether the government must return the property. As the Ninth Circuit explained in *Gladding*, if the government were still considering charges against Roark, then Roark would have the burden of proving an illegal search in order to be entitled to the return of her property. However, all criminal investigations into Roark have ceased. Therefore, Roark is presumed to have a right to her property's return unless the government can provide a legitimate reason for retaining the property. Roark need not prove the illegality of the initial search.

Both parties have agreed that the items currently in dispute consist of twenty-two documents/notebooks and Roark's computer hard drive. The government alleges that those items contain protected information that falls into one or more of the following categories: (1) classified information; (2) unclassified but protected NSA information, and; (3) unclassified HPSCI information protected by its nondisclosure agreement with Roark. The government is willing to return all unprotected information from the computer, as well as the computer itself, but only after a government expert scans the hard drive for protected information. The government refuses to cede control over that process to a third party.

Because I find that the government has satisfied its burden to prove that it has a legitimate interest in the disputed property, the government need only return the unprotected information on Roark's computer hard drive.

## I. Classified Information

Roark insists that none of her documents or computer files are classified, and she alleges the government has a history of over-classifying information. Roark asks this Court to engage in a judicial review of the appropriateness of the government's classification of the disputed materials, but that request is beyond the scope of judicial inquiry. *See United States v. Marchetti*, 466 F.2d 1309, 1317 (4th Cir. 1972) ("[T]he process of classification is part of the executive function beyond the scope of judicial review."); *United States v. Collins*, 720 F.2d 1195, 1198 n.2 (11th Cir. 1983) ("It is an Executive function to classify information, not a judicial one.").

The government submitted a declaration from an NSA expert that four of Roark's documents and four of Roark's computer files are properly classified as Secret or Top Secret. Those documents allegedly relate to intelligence activities, and release of the information could be expected to cause serious damage to United States national security. *See* ECF No. 80, Miriam

6 – OPINION AND ORDER

P. Decl. at ¶¶ 12, 13, 17, 18. Roark has agreed that some of those disputed documents need not

be returned, but she disputes the few remaining classified documents. Based on the declaration of

the NSA expert, the government has demonstrated its legitimate interest in the property that

contains classified information, and this Court declines to engage in further judicial review of

those documents.

## II. NSA Information

The government has identified nineteen items that reference NSA employees in non-

public positions,[3] and employee names is a category of information explicitly exempted from

disclosure by 50 U.S.C. § 3605. *See Lahr v. Nat'l Transpo. Safety Bd.,* 569 F.3d 964, 985 (9th

Cir. 2009) (explaining that the National Security Agency Act falls under FOIA exemption 3 for

matters "specifically exempted from disclosure by statute."). Roark implores this Court to review

the disputed documents that contain information allegedly protected by the NSAA.[4] The

Maryland court, however, properly rejected Roark's position when her associates raised

substantially the same argument in their respective Rule 41(g) motions:

> The rationale precluding judicial review of classification decisions is equally
> applicable to NSAA information. The National Security Agency ("NSA") is
> also an executive agency whose functions "closely relate" to conducting
> national defense. As such, designation of material as statutorily protected by
> the NSAA is as much a part of the executive function as classification.

*Wiebe v. Nat'l Sec. Agency,* No. RDB-11-3245, 2012 WL 4069746 at *4 (D. Md. Sept. 14, 2012)

(internal citations omitted).

---

[3] ECF No. 80, Miriam P. Decl. at ¶ 15

[4] To support her argument, Roark relies heavily on *Founding Church of Scientology of Wash. D.C., Inc. v. Nat'l Sec. Agency,* 610 F.2d 824 (D.C. Cir. 1979). That case is distinguishable because the church sought NSA records relating to the church and its philosophy, which is material without a specific statutory exemption. *Id* at 825. In this case, the disputed materials involve a category explicitly exempted from disclosure by statute. The D.C. court directly acknowledged that the section of the statute on NSA employees "embraces personnel matters of a fairly restricted character and susceptible of little interpretation." *Id.* at 828.

7 – OPINION AND ORDER

Admittedly, NSAA information does not carry with it the same classification levels as Secret and Top Secret information, the release of which imperils national security. However, "The agency need not make a specific showing of potential harm to national security because Congress has already, in enacting the statute, decided that disclosure of NSA activities is potentially harmful." *Lahr*, 569 F.3d at 985 (internal citations and quotations omitted).

Much of Roark's argument regarding NSAA information revolves around her request that this Court overturn the NSA's interpretation of the NSAA and declare other avenues by which citizens can appeal the NSA's withholding of unclassified protected information. Roark insists that the NSA's interpretation has misled the Ninth Circuit into denying review of materials that the NSA has improperly designated as protected. Even if a Rule 41(g) motion were the proper means to challenge the NSA's interpretation of the NSAA, which it is not, this Court would still be bound by Ninth Circuit precedent as articulated in *Lahr*.

The government has carried its burden in this case to show a legitimate interest in the protected NSAA materials in dispute.

## III. HPSCI Information

According to HPSCI rules at the time of Roark's employment, HPSCI staffers could not discuss or disclose:

> (A) the classified substance of the work of the Committee;
> (B) any information received by the Committee in executive session;
> (C) any classified information received by the Committee from any source; or
> (D) the substance of any hearing that was closed to the public pursuant to these rules or the Rules of the House.

ECF No. 81, Dick Decl., Ex. 2 (1999 Committee Rule 12(a)(1)). Those restrictions apply both during the HPSCI staffer's employment and anytime thereafter. *Id.*

8 – OPINION AND ORDER

In Roark's HPSCI nondisclosure agreement ("NDA"), the conditions precedent for her employment mandated that she agree to the House and the HPSCI Rules of Procedure, which include:

> [N]ever divulge, publish, or reveal by writing, word, conduct, or otherwise, either during my tenure with the HPSCI or anytime thereafter, any testimony given before the HPSCI in executive session . . . or information received or generated by the HPSCI that has been identified under established HPSCI security procedures . . . or otherwise by statute, as requiring protection from unauthorized disclosure[.]
>
> . . .
>
> I hereby agree to surrender to the HPSCI . . . upon my separation from the HPSCI staff, all information, material, or restricted data, which I hereby agree not to divulge, publish, or reveal by writing, word, conduct, or otherwise[.]

*Id.* at Ex. 4, ¶¶ 2, 7. Roark also signed a second, narrower NDA to obtain access to Secure Compartmented Information ("SCI"). ECF No. 79, Ex. 1.

The government has identified fifteen documents that allegedly contain protected HPSCI information. ECF No. 81, Dick Decl. at ¶ 8. For each document, the government's expert identified which classification it fell into (classified, executive session, FOUO[5]), each of which was listed in Roark's NDA.

Roark alleges a different NDA governs her materials, and she challenges the HPSCI's determination that some of her documents contain executive session information. As to the additional NDA, this Court is limited to the record before it, and there is no evidence of another superseding NDA that Roark signed with the government. Absent some documentation of a

---

[5] The HPSCI rules and confidentiality agreements apply to the classified information as well as the unclassified information marked "For Official Use Only" ("FOUO").

9 – OPINION AND ORDER

superseding NDA that would grant Roark access to the disputed materials, the government is not obligated to return her documents.[6]

Regarding the HPSCI executive session materials, Roark contends that the government's legal argument is based on impractical and unenforceable interpretations of committee rules. Roark's argument is similar to her challenge to the NSAA in that it revolves around HPSCI's interpretations of its own procedures and regulations. This Court is not in a position to review HPSCI policies or standards for how it classifies its own protected information, and the scope of judicial review in a Rule 41(g) motion only pertains to the government interest in the disputed material. Roark is bound by the NDAs submitted to the court.

Due to the sensitive nature of the information, as well as Roark's own NDAs, the government has satisfied its burden that it has a legitimate interest in the fifteen disputed items.

## IV. The Computer Hard Drive

The vast majority of the documents at issue, including thousands of emails, are found in Roark's computer hard drive. The government contends that at least four files on the computer contain information classified as Top Secret, and therefore the entire hard drive is classified at the Top Secret level. *See* ECF No. 80, Miriam P. Decl. at ¶¶ 17, 19. The government has offered to conduct an automated search for certain key words and return all files that do not result in a "hit" without further review. The NSA and/or HPSCI would then review the files that do return a "hit" to determine whether the files contain classified or protected information, return the unprotected files that returned a "hit," wipe the computer hard drive, and return the computer.

---

[6] I can understand Roark's frustration that I have denied her motion to compel for the allegedly newer, superseding NDA while denying her Rule 41(g) motion based on the lack of the newer, superseding NDA. However, I am restricted to the record before me. The government has repeatedly insisted that no superseding NDA exists, and the government is willing to submit a declaration to that effect. To the extent that a motion to compel would not produce the alleged newer NDA, I would still be in the same position I am now with the two original NDAs, which do not entitle Roark to the return of her documents.

10 – OPINION AND ORDER

Roark claims that the information on her computer is improperly classified. She proposes that her own expert, Martin Peck, use experimental Natural Language Processing software based on IBM's Watson computer to more efficiently search the computer and automatically redact sensitive information. Roark alleges Peck's software would streamline classification review, and she "is willing to serve as a test case." ECF No. 87 at 6. If the parties can agree on a solution, they may submit that solution to the Court. That said, the government has no obligation to cede classification authority to a third party, and this Court is in no position to compel the government to do so.

## CONCLUSION

For the above mentioned reasons, the government's motion for summary judgment, ECF No. 79 is GRANTED. The parties shall confer regarding the automated search of Roark's hard drive. If the parties are unable to come to an agreement, the government shall submit to the Court a plan for the examination of Roark's computer no later than May 29, 2015.

IT IS SO ORDERED.


DATED this 4th day of May, 2015.


                                        /s/ Micahel J. McShane
                                        Michael J. McShane
                                        United States District Judge