Diane Roark, Pro se
2000 N. Scenic View Dr.
Stayton OR 97383
gardenofeden@wvi.com
503-767-2490

FILED 04 AUG '15 10:21 USDC-ORE

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **DIANE ROARK,** | Case No.: 6:12-CV-01354-MC |
| Plaintiff, | **PLAINTIFF'S REPLY TO DEFENDANT'S REPLY IN SUPPORT OF DEFENDANT'S PROPOSED PLAN FOR RETURN OF ELECTRONICALLY STORED INFORMATION** |
| v. | |
| **UNITED STATES OF AMERICA,** | |
| Defendant. | |

Pursuant to the Court's order dated July 7, 2015 (Dkt # 119), Plaintiff Diane Roark submits this reply to Defendant's Reply in support of Defendant's proposed plan for the review and return of electronically stored information (ESI).

**A. Scope of Review.**

Defendant proposed to limit the search for Plaintiff's electronic property to Plaintiff's user profile and her email repository. When Plaintiff's response quoted the standard definition of a user profile, however, Defendant replied that the government would not be held to returning all user-created documents [that the government does not mark for retention]. Instead, Defendant proposes an

Page 1
**Plaintiff's Reply to Defendant's Reply in Support of Defendant's Proposed Plan for Return of Electronically Stored Information**, *Roark v. U.S., 6:12-CV-01354-MC.*

approach that "should encompass most" of her files.

However, the government is obliged legally to return all such Plaintiff property. Although the Defendant wrongfully seized Plaintiff's property and has held it for 8 years, it now attempts to put the onus on Plaintiff to present additional file extensions that might be on her computer from its use 8 to 13 years ago, before it was seized, or such files won't be returned. This is unreasonable. The burden necessarily lies not on Plaintiff, but on Defendant, who has commandeered the computer for 8 years, to conduct a thorough search. Moreover, NSA conducts searches of intelligence targets' computers as a routine part of its daily business, and obviously is accustomed to operating effectively and thoroughly without help from the target.

Defendant proposes a search using 23 "common" file extensions. File extensions listed by the government can be related to other file extensions that should also be checked. More archival formats should be searched; for one example, the extension ".pst" involves email archives that can be opened with Microsoft Outlook. Another example is Microsoft Office's use of extensions ".docx," ".pptx" and ".xlsk," beginning in 2007, that are not on the government's list.

Many listed extensions probably were not used in material originated by Plaintiff, but may have been used by her correspondents. Activities initiated by Plaintiff were confined to composing documents using Windows XP Home Edition OS, sending and receiving emails via AOL 6 and successor(s), and browsing the internet to retrieve information of personal and professional interest. Plaintiff avoided digital photography, chat, IM, music, games, etc. She used Microsoft Worksuite 2002, but correspondents used Microsoft Office and Power Point. Correspondents also used Apple software, photos, different email providers, and doubtless other contrasting types of software that Plaintiff cannot be expected to know about or list.

Defendant's proposal to search only file extensions is incomplete and misleading, omitting analysis of significant amounts of information. It is admitted that "most" (i.e. more than half of) but not all, files "should" be examined. The government's major omission is that inspection can and should address inferred document type, in addition to overt file extensions. This is done by using MIME document headers.[1] MIME information extensions that are based on the last part of a file name should be searched. Additionally and most important is use of MIME Magic, which inspects known document header formats. It can look at files that don't have an extension, are deleted, or are named with an improper extension.[2]

All these additions to the government's proposed process are needed for a proper search and are readily available to meet the government's obligations.

**B. Clarification of Current Status of Search and Review.**

**1. Identifying withheld paper and electronic documents.** Defendant argues that Plaintiff may not herein seek information sufficient to identify paper documents being withheld by NSA, because the current legal phase applies only to electronically stored information (ESI). However, this was a correction of a misunderstanding stated in the Court's opinion, that directly bears on any plan for return of documents.

In its opinion, the Court assumed that Defendant and Plaintiff agreed that 22 paper documents were withheld (Dkt. # 110, p. 6). Thus the Court overlooked the dispute over NSA's failure to number

---

1   The "MIME-type" is a way to describe the kind of document being transmitted. It is named for the format Multipurpose Internet Mail Extensions. It consists of a major type and a minor type, separated by a slash. Some examples are `text/html`, `image/gif`, and `application/octet-stream`. In HTTP, the MIME-type is transmitted in the `Content-Type` header. http://httpd.apache.org/docs/2.2/glossary.html#mime-type. The MIME type of the file is determined by looking at the first few bytes of its contents. http://httpd.apache.org/docs/2.2/mod/mod_mime_magic.html.
2   "Magdir – directory of/etc/magic pieces" in the last section of https://github.com/threatstack/libmagic has some guidelines.

Page 3
**Plaintiff's Reply to Defendant's Reply in Support of Defendant's Proposed Plan for
Return of Electronically Stored Information**, *Roark v. U.S.*, 6:12-CV-01354-MC.

individually certain paper documents retained by the government, or adequately to identify others that were numbered individually. Nor in its discussion of procedures for government review of the hard drive (Dkt. # 110, pp. 10-11) did the Court provide guidance for identifying withheld electronic documents, probably because the Defendant had failed to address the issue.

Defendant did not reply to or dispute the assertion in Plaintiff's response that more than the 22 paper documents cited by the Court have already been withheld. Plaintiff has at least partially admitted this previously (Dkt # 95, pp. 5-6. including footnote 3), and did not in its reply to Plaintiff's response refute the statement that some numbered withholdings contain multiple documents. Plaintiff reiterates that she expects these, including also responses in email "strings," to be identified and evaluated individually, as discussed below, and seeks the Court's opinion in this regard.

There appears to be no rational basis for providing lesser available information about withheld printed documents than for withheld electronic documents (e.g., for paper documents lacking electronic metadata, a physical description, title, author, date, length, reason not returned to Plaintiff). This is especially true since there will likely be far fewer printedthan electronic documents withheld, and some of them are adequately identified.

In its reply regarding its proposed plan for return of ESI (p. 5, section C), the government also blatantly refuses to commit to any standards for identifying withheld electronic documents (see below). Therefore, the issue of whether the government plans to fulfill due process requirements by adequately identifying Plaintiff's documents that it refuses to return, whether paper or electronic, is likely to remain contentious. It would be beneficial if the Court were to determine identifying standards for all types of documents before further electronic review commences. Otherwise, the government will present its decisions as a fait accompli, as it did in Maryland, and there will be no requirement for

Page 4
**Plaintiff's Reply to Defendant's Reply in Support of Defendant's Proposed Plan for Return of Electronically Stored Information**, *Roark v. U.S., 6:12-CV-01354-MC.*

reasonable consistency between different types of documents or for adherence to the Magistrate Judge's guidance in the *Wiebe* case. At best, this likely will prolong this Court's process.

**2. Status and Repetition of Government Electronic Searches** (Defendant Reply, Section B-2, at p. **4**). The government attempts to talk around this issue that was raised by Plaintiff, using undefined terms that muddle the facts requested. From the verbiage and past revelations, however, it appears that:

- NSA completed a *search, count* and *review* of Plaintiff's electronic Word and other files that fall under NSA's own definition of Plaintiff's "user profile" (i.e. everything but email). A careful reading of Defendant's recent reply on ESI, to which this brief replies, admits that a search and count of the user profile was completed. Submissions earlier in this 41 g) case claimed that certain electronic Word documents were classified or sensitive. At least two of the four ccopies of documents earlier alleged to be classified appeared to have been deleted but not overwritten, and apparently were recovered from the hard drive.

- Defendant misleadingly states (pp. 4-5) that "the government" got an initial *count* of files from the "user profile" that "would require" a *review* based on *NSA* search terms. In the next paragraph, however (p. 5), Defendant references an "earlier search" that included everything but email. Logically, one cannot get a "count" of documents to be reviewed without a "search" that turns up the "hits" to be counted. And it cannot be claimed that certain of these documents are classified without having already accomplished an NSA "manual review" of the hits. Therefore, NSA not only searched and counted, but also manually reviewed, user profile materials that were located throughout her user profile, whether in preserved files or in discarded but not completely overwritten files. In other words, NSA's review of Plaintiff's

**Plaintiff's Reply to Defendant's Reply in Support of Defendant's Proposed Plan for Return of Electronically Stored Information**, *Roark v. U.S., 6:12-CV-01354-MC.*

entire user profile apparently was completed. However, NSA now seeks to *repeat* this search and review using a larger key word dictionary.

- Defendant says it got neither a "count" from Plaintiff's user profile for HPSCI's separate key word list, nor an NSA "count" of emails (pp. 4-5). However, this terminology does not exclude the possibility that such key word searches were conducted, but counts of hits were not tallied and presumably manual review of search results had not occurred, when Plaintiff asked that operations be halted pending Court review.

Defendant should clarify its intentionally obscure submission, exposing the full facts.

Plaintiff has already presented a legal argument and Ninth Circuit precedent ruling that computer material falling outside the search warrant terms may not be searched. This Court advised Plaintiff that if she wished to pursue constitutional issues she should launch a separate lawsuit, without directly ruling on searches beyond the warrant's terms. However, the Court implicitly accepted HPSCI's claimed right under a disputed Nondisclosure Agreement, and NSA's right under the NSA Act of 1959, not only to search more broadly but also to withhold the entire text (vice redacting allegedly "protected" material) of a multitude of unclassified documents, many of them quite lengthy. By acknowledging and repeating NSA's plans for further search, the Court opinion in essence agrees to an NSA search outside the warrant's terms and apparently also to a separate HPSCI search, not just a HPSCI review of NSA's own search results.

The question herein is whether there may be multiple such searches by NSA or, for that matter, by HPSCI. NSA now admits that it wants to repeat an electronic search that it already conducted, *using additional key words*. "[T]he government did get an *initial* count" of user profile files (p. 4) but "the earlier search...*did not include all of the necessary search terms*..." (p. 5). In other words,

Page 6
**Plaintiff's Reply to Defendant's Reply in Support of Defendant's Proposed Plan for Return of Electronically Stored Information**, *Roark v. U.S., 6:12-CV-01354-MC.*

Defendants feel they should be free to search as often as they want, disregarding not only Plaintiff's proven innocence and constitutional issues, but also common respect for reasonable privacy rights.

More than eight years into this case, it is unclear why additional more key words would have popped up as needing to be searched. NSA and perhaps HPSCI may be emboldened because the Court stated orally that it definitely will not exercise any judicial review that would question whether withheld documents violate E.O. 13526, Section 1.7, Classification Prohibitions and Limitations. This prohibits concealing illegality, inefficiency, error, embarrassment, or restraint of competition, or delaying release of information that does not require protection in the interest of national security.

Plaintiff requests in the interest of privacy and probity that the Court limit NSA and HPSCI to their prior key word lists and ban repetitive search.

Finally, arguing that it intends to start all over with an expanded search list, the government rejects providing an estimate for how long the manual review process will take, even for the user profile portion that was already searched, counted and reviewed by NSA using an "initial" key word list. Whether HPSCI was allowed to also review NSA's "hits" from Plaintiff's user profile is not addressed, but presumably this occurred, because HPSCI admittedly reviewed Plaintiff's paper documents that NSA had sequestered. Therefore, HPSCI probably must review only the hits from its own search terms that do not overlap with NSA's. HPSCI and NSA should be able to commit to a date in the near future when files from the user profile can be returned.

Paper documents should be returned first and quickly; they have been searched and reviewed, and the only work remaining is to provide better descriptions of some individual documents, should the Court agree with Plaintiff. If Plaintiff's emails have been searched, a count should be immediately available and an estimated date should be provided for reviewing and returning them separately.

Even if the Court allows multiple searches of the electronic user profile, Defendant has a good idea of how much additional time this will take, having already gone through it once. As demonstrated in the Wiebe case, the primary issue is not so much the time the review requires, but rather the priority that NSA and HPSCI accord to the work. Plaintiff likely has far fewer files than did Wiebe plaintiffs, at least two of whom appeared to use computers far more extensively than Plaintiff.

Plaintiff seeks to avoid a repeat of the *Wiebe* experience, in which the government refused to assign more than one person, part time as seldom available, to the electronic search. It took over two years after the judge's ruling for NSA to return all material, and this was finally accomplished only when an exasperated court refused further extensions and imposed a firm deadline. The government has already withheld Plaintiff's property for eight years.

**C.      Metadata for Withheld Documents, and Reasons for Withholding Documents** (Defendant Reply, p. 5).

Defendant is stonewalling Plaintiff and the Court, refusing to commit to identify adequately the documents it refuses to return and the reason(s) for withholding them.

A log of withheld files will be "comparable to those provided in the *Wiebe* case," the government assures the Court. Plaintiff has pointed out that there were vast differences in the manner in which the four Plaintiffs under *Wiebe* were treated. Two, who in written and oral argument sought identifying information, and whose material was the first to be searched and reviewed, received no identifying data. The other two, who again raised the issue after the Court's opinion and secured involvement by the Magistrate Judge, received identifying information but there was considerable difference between them in its extent. For email, one received three categories of information and one got fourteen categories.

Plaintiff seeks an accounting for each individual document withheld, and the maximum information provided under *Wiebe*. The fourteen categories of identifying email information provided to Edward Loomis clearly were automated and thus easily provided. The fourteen columns were followed by scores of blank columns, indicating that if NSA collected additional metadata, it was easily able to circumscribe and tailor its response to Mr. Loomis.

There is no legitimate reason to treat some plaintiffs worse than others. All were innocent. However, the government appeared to have a particular animus against Thomas Drake and Plaintiff. The government sought to pressure these two into false plea bargains; in Drake's case the government went so far as to indict him and then withdraw all ten felony charges four days before trial, and in Plaintiff's case it refused to provide the status of the investigation against her or formally to end it until it was sued. According to Mr. Drake, far more documents shared between the five of us were withheld from Drake than from other *Wiebe* plaintiffs. This indicates retaliation against Drake and/or yet more examples of highly inconsistent classification review.

**D. Returning Emails that are Readable and Searchable** (Defendant Reply, p. 6)**.**

Defendant has been responsive in re-evaluating its opinion that Plaintiff's 10,000-plus emails can be returned only in plain text.[3] The government now says it might be possible to return them in Microsoft Outlook.msg format, including "many" of the AOL fields. However, Defendant does not fully commit to this solution. If Defendant retreats from this position, Plaintiff expects an opportunity to be heard.

In any case, Plaintiff notes that the search warrant of July 2007 listed Plaintiff's AOL email

---

3   Plaintiff discovered an error in her prior Response regarding this section, p. 5, in which she stated that she signed up for AOL in January 2001. The correct date is January 2002.

Page 9
**Plaintiff's Reply to Defendant's Reply in Support of Defendant's Proposed Plan for Return of Electronically Stored Information**, *Roark v. U.S., 6:12-CV-01354-MC.*

address and authorized the FBI to seize these emails. Given that the government long contended inaccurately that these were not on her computer, it must be assumed that the FBI in 2007 sought copies from AOL. This likelihood is heightened because during mediation, the government refused to confirm or deny that it had secured the emails from AOL, claiming only that the emails were not on Plaintiff's computer and therefore need not be returned. Any AOL seizures could serve as a partial or complete database to help reconstitute in full format the returnable emails that are on Plaintiff's computer.

It must be reiterated that Plaintiff's material was wrongly seized and held already for eight years. Justice requires that it be returned promptly and also in usable format, one way or another.

DATED this 4th day of August 2015.

Respectfully submitted,

*Diane Roark*

Diane Roark, Pro se

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **Plaintiff's Reply to Defendant's Reply in Support of Defendant's Proposed Plan for Return of Electronically Stored Information** was placed in a postage prepaid envelope and deposited in the United States Mail at Stayton, Oregon on July 21, 2015, addressed to:

    James E. Cox, Jr., AUSA

    1000 S.W. Third Av., Suite 600

    Portland OR 97204

And was sent via email to the following email address:

    Jim.Cox@usdoj.gov

*/s/ Diane Roark*

Diane Roark, Pro se

**Plaintiff's Reply to Defendant's Reply in Support of Defendant's Proposed Plan for Return of Electronically Stored Information**, *Roark v. U.S., 6:12-CV-01354-MC.*